**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES BRESLIN, PAUL** | **:** | |
| **CUNNINGHAM, and PHILLIP** | **:** | |
| **THOMPSON,** | **:** | |
| **Plaintiffs,** | **:** | **Civil Action No. 1:09-cv-1396** |
| | **:** | |
| **v.** | **:** | **(Chief Judge Kane)** |
| | **:** | |
| **DICKINSON TOWNSHIP, RAYMOND** | **:** | |
| **JONES, ALLYN PERKINS, DANIEL** | **:** | |
| **WYRICK, ANTHONY ZIZZI, RONALD** | **:** | |
| **REEDER, and EDWARD SCHORPP,** | **:** | |
| **Defendants** | **:** | |

## MEMORANDUM

Before the Court are two motions to dismiss the amended complaint, one brought by

Defendant Edward Schorpp (Doc. No. 41) and the other by Defendants Dickinson Township,

Raymond Jones, Allyn Perkins, Daniel Wyrick, Anthony Zizzi, and Ronald Reeder[1] (hereinafter

collectively "Township Defendants") (Doc. No. 39). Because Defendants' arguments overlap,

the Court will analyze the motions in tandem. Defendants argue that all claims should be

dismissed as facially insufficient, barred by the statute of limitations, or barred by qualified

immunity. Oral argument on the motions was held July 16, 2010. For the reasons that follow, the

motions will be granted in part and denied in part.

## I.    BACKGROUND[2]

Defendant Edward Schorpp is and has been a Township Solicitor for Dickinson

---

[1]At oral argument, Plaintiffs stipulated to the dismissal of Defendant Reeder. Accordingly, the amended complaint's allegations against Reeder will not be considered.

[2]In accordance with the standard of review for motions to dismiss, the Court takes all factual allegations in the complaint as true.

Township ("the Township") since January 2006. (Doc. No. 36 ¶ 15.) Defendants Daniel Wyrick, Raymond Jones, and Allyn Perkins are Township Supervisors. (Id. ¶¶ 14-15, 18.) Defendant Anthony Zizzi is an elected Township Auditor. (Id. ¶ 72.) Plaintiffs Charles Breslin, Paul Cunningham, and Phillip Thompson are residents of the Township concerned about the affairs and proper administration of the Township. (Id. ¶¶ 35, 42, 44, 68.) In a sweeping 33-page complaint littered with scarcely-organized facts, Plaintiffs claim that they engaged in conduct that sought to correct public corruption in Dickinson Township. (Id. ¶ 1.) Plaintiffs implicate named Defendants and others in abuses related to their official duties spanning a course of years.

Plaintiffs allege that they first became concerned about impropriety in the administration of Township affairs in 2005 when Defendants Schorpp, Wyrick, Jones, and Zizzi allegedly conspired to thwart Supervisor Ginter's bid for re-election as Township Supervisor. (Id. ¶¶ 26-28.) Ginter is, however, not a party to this suit, and Defendants' actions against him do not form the basis of any claims in the amended complaint. Rather, Defendants' involvement with Ginter serves as background for Plaintiffs' initial investigation and involvement into Township records and affairs. (Id. ¶¶ 41, 44, 50, 54, 55.)

On or about February 2006, Plaintiff Breslin organized a citizen's group that he hoped would rally enough support to defeat a proposal to build a warehouse in the Township. (Doc. No. 1 ¶¶ 34-35.) Defendant Wyrick promised to vote to deny the warehouse proposal if Breslin garnered enough citizen support. (Id. ¶ 36.) Despite Wyrick's promise, on July 28, 2006, Schorpp attempted to reach a settlement agreement between the citizen's group and the warehouse developer that would permit passage of the warehouse plan. (Id.) In August 2006, Schorpp accused Breslin of making a "personal attack" on him and forbid Breslin from

contacting him further. (Id. ¶ 37.) Wyrick asked Breslin not to publicize Schorpp's actions regarding the warehouse plan. (Id. ¶ 38.) The outcome of the warehouse proposal and context and content of Schorpp's accusation are not stated in the complaint.

In January 2007, Plaintiffs all became concerned that Schorpp was improperly using Township funds and improperly disclosing personnel records to an outside law firm. (Id. ¶ 42.) Specifically, Plaintiffs discovered that "a Pittsburgh law firm" not identified in the complaint had billed the Township for personnel matters at the behest of Schorpp in December 2005, during which time Schorpp was not Township Solicitor.[3] (Id.) To ascertain the details, Plaintiffs requested a copy of the December 2005 billing record and other Township documents pursuant to the Pennsylvania Right to Know law. (Id. ¶ 45.) Schorpp informed the Township Supervisors that the Township "had no duty to make such records available." (Id.) Through multiple document requests, Plaintiffs eventually received many of the requested documents, but they never received the December 2005 bill indicating whether Schorpp had improperly used Township funds to pay the Pittsburgh law firm. (Id. ¶¶ 46, 57.) Thompson continued to seek the missing billing statement through public information requests, letters, and a meeting with Jones. (Id. ¶¶ 57-60.)

In March 2007, Schorpp allegedly threatened Thompson with suit because Thompson publically disclosed, or threatened to disclose, Schorpp's social security number. (Id. ¶ 51.) Thompson had acquired Schorpp's social security number from one of the documents received in a public records request. (Id. ¶ 52.)

---

[3] Defendant Schorpp had also served as Township Solicitor from an undisclosed period of time until he resigned in April 2004. (Doc. No. 36 ¶ 25.) From April 2004 to January 2006, however, Schorpp held no position with the Township. (Id.; Doc. No. 13 at 21.)

On March 5, 2007, Plaintiffs attended a public Township meeting. (Id. ¶ 53.) At the meeting, they questioned Township Supervisors about the termination of Township employees, particularly Supervisor Ginter's supporters who had been terminated after Ginter lost his re-election bid in 2005. (Id. ¶¶ 27, 29, 32-33, 50, 53.) At a March 19, 2007, Township meeting, Plaintiff Thompson asked "who authorized the hiring of the Pittsburgh law firm, and . . . [w]hat was the purpose behind forcing Ginter's resignation . . . ." (Id. ¶ 54.) Schorpp responded by accusing Thompson of impersonating a federal officer, declaring him out-of-order, and ordering him to return to his seat. (Id. ¶ 55.) Plaintiffs allege that the minutes of both March meetings were altered by unidentified Township officials. (Id. ¶ 56.)

In November 2007, Plaintiffs learned of, and began to inquire about, an "improper transfer of large amounts of money from account to account, by unauthorized persons in the Township." (Id. ¶ 61.) Plaintiffs were alerted to the alleged misconduct when the then-presiding Township Manager, unnamed in the complaint, suggested that an audit of the Township's finances had uncovered "irregularities" in the handling of Township funds. (Id. ¶ 64.) These irregularities included the transfer and liquidation of Township investment securities totaling $625,000, costing the taxpayers approximately $15,000. (Id. ¶¶ 64-66.) Though Zizzi publicly reported that he investigated the irregularities and found that most of the money had been recovered, Plaintiffs challenged these findings. (Id. ¶ 73.)

Breslin challenged Zizzi's investigation on the basis that Zizzi, as campaign manager for three Township Supervisors, had a conflict of interest in the investigation. Zizzi had also failed to follow a state quorum law requiring that two auditors agree prior to undertaking any investigation. (Id. ¶¶ 71-74.) Cunningham, too, "complained . . . verbally and in writing" about

Wyrick's role in the fund-transfer issue and other "alleged abuse of services." (Id. ¶ 61.)

In January 2008, Thompson requested audit-related information but was denied access to such information. (Id. ¶ 84.) Breslin made three additional requests for copies of public documents and information pertaining to the audit reports between May and October 2008, but was also denied access. (Id. ¶ 83.) After placing his third request for the audit documents, Breslin received a "sewerage inspection letter" falsely indicating that his septic system was not in compliance with municipal codes. (Id.) Plaintiffs believe that they did not receive the requested documents because Schorpp advised the Township not to disclose the information. (Id. ¶ 84.) The audit report was eventually disclosed in November 2008. (Id. ¶ 99.)

On October 21, 2008, Breslin read a statement at a public meeting. (Id. ¶¶ 77, 80.) In the statement, Breslin accused the Township Supervisors and Auditors of "failing to do their job." (Id. ¶ 78.) He also called for Schorpp's resignation. (Id.) Plaintiffs allege that Breslin was "supported in the aforementioned activities" by Cunningham and Thompson, though Plaintiffs fail to specify whether Cunningham and Thompson were active in their support or whether they simply agreed with Breslin's action. (Id. ¶ 80.) Ronald Reeder, Township Manager, responded to this statement by placing a "heated and intimidating phone call" to Breslin's lawyer the following day. (Id.) Breslin then filed a private criminal complaint against Defendant Zizzi, Elizabeth Checchia, and Mary Lehman[4] in Cumberland County District Court. (Id. ¶ 79.)

At a public meeting in November 2008, the Board of Supervisors labeled Plaintiffs "'malcontents' in both written and oral statements" and accused Plaintiffs of making "personal

---

[4]Checchia and Lehman are not further identified anywhere in Plaintiffs' amended complaint, but Exhibit 1 to the amended complaint indicates that they are other Township Auditors. (Doc. No. 36-2 at 3-4.)

attacks" against Township officials. (<u>Id.</u> ¶¶ 81, 82, 97.) On November 17, 2008, Jones, speaking in his capacity as Chairman of the Board of Supervisors, again labeled Plaintiffs "malcontents" and made "a number of totally baseless" accusations against them. (<u>Id.</u> ¶ 97.) The Board of Supervisors then enacted a ban on raising historical issues during Township meetings. (<u>Id.</u> ¶ 98.)

At a Township meeting on December 8, 2008, Jones prevented Thompson from speaking on historical issues, citing the recently-enacted ban on raising historical issues at meetings. (<u>Id.</u> ¶ 103.) Only Plaintiffs were prevented from speaking. (<u>Id.</u> ¶ 104.) Wyrick read a statement "raising questions of character, integrity and motive on the plaintiffs' part." (<u>Id.</u> ¶ 100.) The statement renewed assertions made earlier by Schorpp: that Plaintiff Thompson had impersonated a federal officer. (<u>Id.</u> ¶ 102.) Wyrick also asserted that Thompson had threatened Wyrick's family and had threatened to destroy Wyrick personally and professionally. (<u>Id.</u>) Additionally, Wyrick questioned "Breslin's motives regarding his involvement in Township matters." (<u>Id.</u>) After the meeting, Plaintiffs requested a copy of Wyrick's statement using the Right to Know law. (<u>Id.</u> ¶ 100.) Though they were initially denied access, the statement was later disclosed. (<u>Id.</u> ¶ 101.)

In March 2009, Thompson made another request under the Right to Know law for information related to legal services, which Schorpp characterized as "disruptive" and an unreasonable burden on Township business. (<u>Id.</u> ¶ 111.) Thompson appealed the Township's non-disclosure decision to the Pennsylvania Office of Open Records, and he won. (<u>Id.</u>)

In June 2009, a new resolution was passed regulating citizen input at public meetings because the Township Solicitors believed there had been some "abusers" of the public input process. (<u>Id.</u> ¶ 105.) At the July 6, 2009, Township meeting, Thompson publicly inquired about

this new resolution, asking precisely who was abusing the public input process. (Id.) Jones, supported by Perkins and Schorpp, declared Thompson "out of order" for this inquiry and prevented him from speaking. (Id. ¶¶ 105-07.) On July 17, 2009, Plaintiffs filed the pending action against Defendants. Defendant have, nonetheless, continued to deny Plaintiffs speaking opportunities at Township meetings.

At some point after July 17, 2009, Defendants conspired to conduct a "write-in campaign to install the plaintiffs as Dickinson Township Auditors against their will." (Id. ¶ 119.) Plaintiffs allege that the campaign was designed to harass them and to create a conflict of interest, forcing them to abandon this lawsuit against Defendants and the Township.

Plaintiffs allege that these facts constitute unlawful retaliation under the First Amendment, unlawful prohibitions on speech under the First Amendment, and denial of the right to equal protection of the laws under the Fourteenth Amendment, all pursuant to 42 U.S.C. § 1983. Plaintiffs also allege a state law defamation claim against Defendants.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist."  Kost, 1 F.3d at 183 (citations omitted). A court, however, "need not credit a

complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). Indeed, the Supreme Court has recently held that while the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'" Phillips v. County of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)).

## III. DISCUSSION

Plaintiffs allege that the factual averments against all four remaining Defendants make out violations of the First Amendment, Fourteenth Amendment, and § 1983, as well as constitute defamation under state law. The Court will begin by considering Plaintiffs' First Amendment claims, first as allegations of unlawful prohibitions on speech against each Defendant and second, as retaliation claims against each Defendant for each Plaintiff having engaged in protected speech. The Court will then consider Plaintiffs' equal protection and defamation claims.

### A. First Amendment Claims

Most of Plaintiffs' many factual allegations appear to be related to Plaintiffs' claims that, at Defendants' hands, they suffered direct prohibitions on speech and retaliation for having

exercised their First Amendment speech rights.[5] Defendant Schorpp moves to dismiss Plaintiffs'

First Amendment claims that occurred prior to July 17, 2007, on statute of limitations grounds.

The Court will entertain Township Defendants' statute of limitations challenge as well, as they

raised the statute of limitations issue in their reply brief and at oral argument. Plaintiffs have had

a full opportunity to address the statute of limitations question, even though it was not raised in

Township Defendants' first brief; the Court finds that the interests of judicial efficiency weigh in

favor of considering the limitations issue as put forward by all Defendants. See Roman v. Jeffes,

904 F.2d 192, 196 (3d Cir. 1990) (stating that a court may *sua sponte* consider arguments not

initially raised when a litigant has had the opportunity to address them either orally or in

writing). After considering the statute of limitations question, the Court will consider whether

the remaining allegations state a claim and whether Defendants are entitled to qualified

immunity.

### 1. Statute of Limitations

In the instant case, filed July 17, 2009, Plaintiffs allege incidents occurring as far back as

2004. They posit that the continuing violations theory allows them to recover for all alleged

violations provided at least one violation occurs within the limitations period. Defendants argue

---

[5]As with much of Plaintiffs' amended complaint, the paragraphs at issue contain generalized allegations and fail to provide a detailed description of the conduct complained of or to specify which Defendant was responsible for which alleged First Amendment violations. As one example, the amended complaint alleges that "Plaintiffs requested a copy of defendant Wyrick's public attack under the Right to Know Law and were denied," but it does not clarify which Plaintiffs made the request and which Defendants were involved in the decision to deny the documents. (Doc. No. 36 ¶ 101.) In another example, the amended complaint implies that Defendant Jones prohibited Plaintiff Thompson's speech, but only actually states that "Thompson was about to speak at a public meeting when Jones asked him 'Are you here to raise an historical issue'. This related to the previous limitations ordered on the plaintiffs' right to speak. The plaintiffs were denied their right to free speech." (Doc. No. 36 ¶ 103.)

that all claims are independently actionable, thus claims accruing before July 17, 2007, are untimely. The Court must agree with Defendants on this issue.

The continuing violations theory permits a plaintiff to recover for "conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination." Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 481 (3d Cir. 1997) (internal citations omitted). Yet, the continuing violations theory cannot be applied to acts which are independently actionable. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112-14 (2002) (holding that the continuing violations theory does not apply to discrete, independently actionable events even if they are related to or are a part of a pattern or practice of discrimination); O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006) (applying the Supreme Court's holding Morgan, a Title VII case, to § 1983 retaliation claims). Indeed, the Third Circuit Court of Appeals has explicitly held that the continuing violations theory does not apply to First Amendment retaliation claims, because retaliation claims are individually actionable from the time they first occur. The court has stated:

> [T]he Morgan rule that individually actionable allegations cannot be aggregated is of particular import in the context of First Amendment retaliation claims. *First Amendment retaliation claims are always individually actionable, even when relatively minor.*

O'Connor, 440 F.3d at 127-28 (emphasis added). Clearly, the continuing violations theory does not apply to Plaintiffs' First Amendment retaliation claims in this case. The dismissal of claims occurring prior to the limitations period is warranted even at this early stage in the litigation because Plaintiffs made clear that they rely only upon the inapplicable continuing violations theory to make timely those claims that occurred prior to July 2007.

Applying the same reasoning the Third Circuit used with respect to retaliation claims, the

Court finds that the continuing violations theory is inapplicable to Plaintiffs' direct First Amendment prohibition of speech claims. The prohibition of one's right to speak freely is independently actionable as of the time the right is curtailed, thus, Plaintiffs cannot rely on the continuing violations theory to make timely those claims accruing outside the limitations period.

Accordingly, Plaintiffs may only proceed with those claims arising within the limitations period: on or after July 17, 2007. Specifically, the alleged actions in March 2007 that Plaintiffs claim limited their First Amendment rights or constituted retaliation against them for having previously exercised their First Amendment rights are time-barred. (Doc. No. 36 ¶¶ 86-91.)

## 2. First Amendment Direct Prohibition on Speech Claim

Plaintiffs make one claim of direct speech infringement and four remaining retaliation claims that do occur within the statute of limitations. To wit, Plaintiffs allege that, because they criticized Defendants' management of Township affairs, Defendants limited Plaintiffs' ability to speak at public meetings (Id. ¶¶ 103-05, 107); Defendants refused or delayed disclosure of their public document requests (Doc. No. 36 ¶¶ 83, 84, 110, 111); Defendants initiated a write-in campaign to elect Plaintiffs to Township Auditor positions (Id. ¶¶ 119-22); and Defendants called Plaintiffs malcontents, disruptive, and abusers of the Right to Know law and even threatened suit against Thompson (Id. ¶¶ 81, 92, 96, 97, 99, 102, 105, 111).[6] Because the same legal framework that supports Plaintiffs' freedom of expression claims also supports the protected conduct aspect of Plaintiffs' retaliation claims, the Court begins with the issue of

---

[6]Plaintiff Breslin's claims that he received an "intimidating phone call that was traced to defendant Reeder" and a sewerage inspection letter must be dismissed. Defendant Reeder has been dismissed, and the amended complaint does not allege that named Defendants participated in any facet of the distribution of the letter. (Doc. No. 36 ¶¶ 78, 83.)

whether Plaintiffs have a First Amendment right to speak at public meetings that was infringed by Defendants.

To state a claim pursuant to § 1983, a plaintiff must establish that there has 1) been a deprivation of a federal right and 2) that the deprivation was "committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The federal right of which Plaintiffs were allegedly deprived is the right to speech. Plaintiffs argue that their right to free speech includes the right to speak out about Township affairs at public Township meetings, and thus Defendants violated the First Amendment by enacting resolutions that prevented Plaintiffs from raising their desired issues and exposing Township corruption.

Despite Defendants' arguments to the contrary, the Third Circuit Court of Appeals has held that citizens have a right, subject to some limitations, to express themselves freely at public township meetings. Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 280-81 (3d Cir. 2004) (public township meeting is a limited public forum). A township may restrict speech at meetings, but "content-regulated restrictions on speech are subject to strict scrutiny, and viewpoint-based restrictions are unlawful regardless of whether they also serve some valid time, place, manner interest." Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006).

Plaintiffs allege they spoke critically of Defendants at Township meetings in 2007. (Doc. No. 36 ¶¶ 53-61, 77-80.) This allegation is sufficient to suggest Plaintiffs engaged in protected conduct. The amended complaint implies that Defendant Jones, knowing Plaintiffs' desire to continue to express views critical of Township management, responded by enacting a resolution to restrict the content and viewpoints expressed by Plaintiffs at Township meetings. (Id. ¶¶ 98, 103, 104, 107.) Because content-based restrictions are subject to the highest form of scrutiny,

and view-based restrictions are almost always unlawful, Plaintiffs' allegations are sufficient, at this stage of proceedings to establish a claim that Defendant Jones violated Plaintiffs' First Amendment right to freedom of expression. Plaintiffs have failed to allege, however, that the other Defendants played more than a supportive role in Jones's actions to infringe Plaintiffs' right to speak out. Likewise, Plaintiffs have not alleged any individual action on the part of Defendant Zizzi, Township Auditor, thus the First Amendment claim against Defendant Zizzi will be dismissed. See Thomas, 463 F.3d at 298 (requiring allegations of personal involvement to support a § 1983 claim). Defendants Schorpp, Perkins, and Wyrick must also be dismissed from the direct First Amendment claim because Plaintiffs have only pled and alleged that these Defendants supported Jones's actions. Id.; (Doc. No. 36 ¶¶ 98, 107.)

Accordingly, the Court finds that Plaintiffs have adequately alleged that they engaged in protected conduct by speaking out about public corruption at Township meetings. They have also adequately alleged that Defendant Jones violated their right to free speech by prohibiting them from expressing their viewpoints on Township issues at subsequent meetings. Without more specific allegations against other individual Defendants, only Plaintiffs' claims against Defendant Jones are viable.

### 3. First Amendment Retaliation Claims

Having found that Plaintiffs adequately alleged that they engaged in protected conduct, the Court turns now to the remaining elements of Plaintiffs' retaliation claims. To state a First Amendment retaliation claim, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the

retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). Plaintiffs

must also provide factual support to suggest that each Defendant was involved in a retaliatory

action against each Plaintiff for all parties to withstand the motion to dismiss. See Thomas, 463

F.3d at 298. With respect to each of the four discernable remaining allegations of retaliation, the

Court will independently consider which Plaintiffs have met that burden against which

Defendants.

### i.       Preventing Future Speech at Township Meetings

The amended complaint can be read to assert a claim that Defendants retaliated against

Plaintiffs' speech by enacting specific resolutions prohibiting Plaintiffs' speech at future

meetings. Accepting all allegations as true and viewing them in the light most favorable to

Plaintiffs, Defendant Jones's actions at the 2008 meetings in which he prevented Plaintiffs from

speaking may be seen as sufficient to deter a person of ordinary firmness from engaging in

protected conduct and as retribution for unflattering speech made by Plaintiffs in 2007. (Doc.

No. 36 ¶¶ 98, 105, 107.) The deterrence power and punishing effect of direct prohibitions on

speech at Township meetings is plain. Yet, the allegations in the amended complaint only

provide factual support for Plaintiffs' claim that they were prevented from speaking by Jones.

Therefore, this retaliation claim will only be allowed to proceed as brought by Plaintiffs against

Defendant Jones.

### ii.       Name-Calling and Threats of Suit

Next, Plaintiffs allege that, in retaliation for having spoken out at Township meetings,

Defendants publicly disparaged them and threatened to file suit against Thompson. The Third

Circuit Court of Appeals has never explicitly ruled on the issue of whether public

admonishments and threats of exercising one's own First Amendment right to petition the

government are sufficient to deter a person of ordinary firmness from exercising his or her

constitutional rights, but many lower courts have held that they are not. See Maclean v. Secor,

876 F. Supp. 695, 698-99 (E.D. Pa. 1995) (collecting cases finding threats and harassment alone

insufficient to support a retaliation claim). Three recent, unpublished Third Circuit cases suggest

that verbal attacks, statements, and unaccompanied threats do not constitute retaliatory acts.

Wilson v. Zielke, No. 09-2607, 2010 WL 2144292 (3d Cir. May 28, 2010) (reversing district

court's denial of summary judgment because contours of when a threat constitutes an adverse

action "[N]either the United States Supreme Court nor this Circuit has defined with specificity

the contours of when a threat constitutes an adverse action in the official-detainee setting");

Burgos v. Canino, No. 09-3443, 358 F. App'x 302, 306 (3d Cir. Dec. 23, 2009) ("Burgos's

retaliation claims . . . based on unfulfilled threats, did not survive the motion for summary

judgment."); Municipal Revenue Servs., Inc. v. McBlain, No. 08-3734, 347 F. App'x 817, 825

(3d Cir. Oct. 6, 2009) (finding officials' speech insufficient to be retaliatory action); see also,

Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 743 (1983) (finding that the filing of

non-sham lawsuit, even if retaliatory, cannot form basis of retaliation claim under labor laws). In

summary, the unconstitutionality of retaliatory name-calling, threats of lawsuits, and unflattering

characterizations is unclear, at best.

Where the law is not clearly established with respect to a constitutional right, qualified

immunity applies to shield a defendant from liability. Pearson v. Callahan, 129 S. Ct. 808, 815

(2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (allowing a court to grant

qualified immunity where a right is not clearly established without first determining whether a

constitutional violation has been alleged)). Accordingly, even assuming that Plaintiffs can establish that Defendants threatened to file lawsuits against them and called them malcontents, abusers, and disruptive, such conduct does not represent a constitutional violation or a clearly established right at the time it occurred. Thus, Defendants are entitled to qualified immunity on this claim.

### iii.    Write-in Campaign

Likewise, the Court need not determine whether Defendants' organization of a write-in campaign to elect Plaintiffs to Township offices constitutes actionable retaliation because Plaintiffs claim does not allege a right that was clearly established at the time of Defendants' conduct. Plaintiffs have provided no authority for the proposition that Defendants engaged in retaliatory conduct prohibited by the First Amendment by encouraging others to elect Plaintiffs to public office. Even assuming that such conduct was mischievous or even malicious and vexatious, it cannot be presumed that such actions would deter a person of ordinary firmness from being vocal about Township issues. Moreover, a claim that a government official acted in retaliation by engaging in his or her own political speech and voting decisions, if allowed to proceed, raises serious questions about the line between an official's own First Amendment rights and those held by other citizens. See Municipal Revenue Servs., 347 F. App'x at 824-25 (discussing intersection between a government official's right to speech and a plaintiff's right to be free from retaliation). At the least, Defendants were not on notice as to the unconstitutionality of their alleged write-in campaign activities, therefore, qualified immunity shields them from liability for Plaintiffs' retaliation claims prefaced on the election activity.

### iv.    Denial of Document Requests

The Court now turns to Plaintiffs' claim that Defendants denied, or at least delayed, Plaintiffs' documents requests in retaliation for Plaintiffs' having engaged in protected speech. In the light most favorable to Plaintiffs, this action may be deemed sufficient to deter a person of ordinary firmness. In Anderson v. Davila, the Third Circuit Court of Appeals suggested that the denial of a legal right or benefit in retaliation for the exercise of protected activity is a First Amendment violation. Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997) (collecting cases finding that denial of a government permit or benefit was a sufficient action of retaliation to state a claim). Plaintiffs' allegations with respect to the denial of their document requests are analogous to the actions discussed in Anderson as retaliatory.

Namely, the amended complaint alleges that certain Defendants retaliated against Plaintiffs Breslin and Thompson by denying them documents which they were legally entitled to access under Pennsylvania law simply because they had previously spoken out against Defendants. (Doc. No. 36 ¶¶ 83-84, 93-94, 99, 101, 109-11.) Yet there are no specific allegations that Plaintiff Cunningham sought and was denied document disclosures within the limitations period, therefore his claim will be dismissed. Additionally, there are no specific allegations that Defendants Zizzi, Perkins, or Wyrick had personal involvement in the decisions regarding the document requests, thus the retaliation claims against them prefaced on the document disclosures must also be dismissed.

With respect to the application of qualified immunity to shield the remaining Defendants, it will be denied at this point in the litigation. The precedent established and discussed in Anderson is sufficient to have put a reasonable person on notice that retaliating against someone who spoke unfavorably about Township affairs by denying them the government benefit of

lawful access to public documents is unlawful. Accordingly, Defendants Schorpp and Jones are not entitled to qualified immunity on this claim, at this time. Last, the Court notes that the allegations against Schorpp with respect to this claim are sufficient to allege actions under color of state law because they allege that Schorpp made the decision, on behalf of the Township, not to disclose certain documents to Plaintiffs.

To summarize the First Amendment claims, then, the Court finds that Plaintiffs have each alleged a direct First Amendment violation against Defendant Jones; Plaintiffs have each stated a First Amendment retaliation claim against Defendant Jones for curtailing their speech at Township meetings; and Plaintiffs Breslin and Thompson have alleged a First Amendment retaliation claim against Defendants Jones and Schorpp for failing to disclose public documents pursuant to valid document requests. All other First Amendment claims will be dismissed.

**B.      Equal Protection Claims**

Plaintiffs allege that their Fourteenth Amendment right to equal protection of the laws was violated when, in March 2007, November 2008, and December 2008, Schorpp and Township Defendants selectively enforced resolutions against Plaintiffs and limited their speech at public meetings. (Doc. No. 36 ¶ 104.)

To state a claim for a "class of one" equal protection violation, a plaintiff must allege "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008) (citing Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006)). Though a plaintiff need not allege "specific instances where others have been treated differently," he  must "at a minimum allege that he was intentionally treated

differently from others similarly situated by the defendant and that there was no rational basis for such treatment." See Phillips, 515 F.3d at 243, 245 (finding equal protection claim insufficient where the plaintiff failed to allege how the state's actions resulted in him being treated differently); Hill, 455 F.3d at 239 (upholding dismissal of class of one equal protection claim where the plaintiff failed to allege existence of other similarly-situated individuals).

In the case *sub judice*, Plaintiffs engage in a boilerplate recitation of the elements of an equal protection claim, stating that "[o]nly Breslin, Cunningham, and Thompson are singled out for this special prohibition." (Doc. No. 36 ¶ 104.) Yet, the amended complaint fails to provide factual support for this assertion. The amended complaint does not allege that others were allowed to speak at the meetings, let alone that others were allowed to speak on historical issues. Indeed, the only reference to someone who might be considered similarly situated indicates that he, too, was prevented from speaking. (Id. ¶ 106.) The amended complaint is barren of factual averments regarding others citizens who were treated more favorably than Plaintiffs. Absent such factual support, the Court cannot find that Plaintiffs have stated an equal protection claim. Plaintiffs' equal protection claims must be dismissed.

### C. State Law Defamation Claims

Defendants also seek dismissal of Plaintiffs' defamation claims. In the light most favorable to Plaintiffs, the amended complaint makes the following averments that might be construed as stating claims for defamation: Defendants accused Thompson of impersonating a federal officer; Defendants "attacked" Cunningham in a public statement in "mid 2008"; Defendants referred to Plaintiffs as "malcontents," "disruptive," or "abusers"; and Schorpp accused Thompson of having made "a disruptive request" under the Right to Know law. (Doc.

No. 36 ¶¶ 55, 62, 81, 96, 97, 102, 111.)

To establish a defamation claim under Pennsylvania law, a plaintiff must allege the following elements:

> (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) an understanding by the reader or listener of its defamatory meaning; (5) an understanding by the reader or listener of an intent by the defendant that the statement refers to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged position.

42 P.S. § 8343(a). To constitute the sixth element, "special harm," a plaintiff must allege "actual damages which are economic or pecuniary losses" if he does not allege slander *per se*. Pennoyer v. Marriott Hotel Svs., Inc., 324 F. Supp. 2d 614, 617 (E.D. Pa. 2004) (defining slander *per se* as including allegations of criminal offense, loathsome disease, business misconduct, or sexual misconduct). The trial court is charged with determining whether a statement is defamatory in nature, which is to say that the statement "tends to harm an individual's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her." Moore v. Cobb-Nettleton, 889 A.2d 1262, 1267 (Pa. Super. Ct. 2005). A statement of mere opinion is not defamatory. Id.

The allegations in the amended complaint are insufficiently specific for the Court to determine whether the "attack" on Cunningham was defamatory, thus Cunningham has failed to sufficiently allege a defamation claim. See 42 P.S. § 8343(a) (allocating initial burden to the plaintiffs to plead the defamatory character of the communication). Additionally, Defendants' references to Plaintiffs as malcontents, disruptive, or abusers, cannot form the basis of a defamation claim because the statements are opinions. Moreover, these allegations are

unsupported by factual assertions from which the Court could conclude that Plaintiffs' reputation in the community suffered as a result of the alleged name-calling.

Last, the Court considers the only allegation which might be deemed defamatory in nature, that Defendants stated that Thompson had impersonated a federal officer. This claim also fails because the amended complaint is devoid of allegations as to how the statement harmed Thompson's reputation in the community or caused him "special harm." Thompson's failure to aver that his reputation was affected or that he suffered economic loss due to Defendants' words is fatal to his claim. See Pennoyer, 324 F. Supp. 2d at 617 (denying defamation claim where a plaintiff did not "identif[y] any economic or pecuniary losses suffered as a direct result" of the defamatory statements). Accordingly, all defamation claims will be dismissed.

### D. Punitive Damages

Last, Schorpp alleges that Plaintiffs have insufficiently alleged that they are entitled to punitive damages, as required by Pennsylvania law. Given that all state law claims will be dismissed, so too are any allegations for punitive damages made pursuant to state law. Accordingly, Schorpp's argument for dismissal of punitive damages shall be deemed moot.

## IV. AMENDMENT

The Third Circuit Court of Appeals favors allowing plaintiffs in § 1983 cases leave to amend their complaints prior to dismissal, unless doing so would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004); Fletcher-Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007). At the same time, when the plaintiffs have evidenced a desire to stand on the allegations as stated, the entrance of final judgment on insufficient claims is warranted. See Frederico v. Home Depot, 507 F.3d 188, 192 (3d Cir. 2007) (holding that a

plaintiff elected to stand on her complaint by repeatedly asserting the validity of her averments and by failing to seek leave to amend following dismissal). In this case, after Defendants filed one motion to dismiss, Plaintiffs amended their complaint. The amendment added new claims, but did not address any of the deficiencies alleged by Defendants, thus indicating an intent to stand by their initial allegations. Indeed, Plaintiffs filed a motion for leave to file a second amended complaint just days prior to oral argument on the motions to dismiss. (Doc. No. 63.) That amended complaint, too, failed to address any of the issues raised by Defendants in their motions to dismiss, adding only new claims that are facially frivolous, if not impertinent. (Doc. No. 63-2.) Finally, at oral argument, Plaintiffs again stood by the allegations in the complaint without indicating a desire to amend other than with respect to adding new claims.

Accordingly, because Plaintiffs have indicated a desire to stand by the allegations in their amended complaint, and their recent proposed amended complaint indicates that granting leave to amend would be futile, the Court will deny the pending motion to amend without granting Plaintiffs an automatic leave to amend. Plaintiffs may, however, move to amend their complaint within twenty days in accordance with Local Rule 15.1. M.D. Pa. L.R. 15.1. If the proposed amended complaint presents non-frivolous new claims or adequately addresses the shortcomings addressed herein, the Court will grant the motion.

## V. CONCLUSION

For the foregoing reasons, the Court finds that all claims accruing prior to July 17, 2007, will be dismissed, as will all equal protection and defamation claims. The only claims sufficiently pled in the amended complaint are that Defendant Jones violated Plaintiffs' First Amendment right to free speech; Jones retaliated against Plaintiffs by preventing them from

speaking at Township meetings in 2008; and Defendants Jones and Schorpp retaliated against

Plaintiffs Breslin and Thompson by withholding public document requests.

An order consistent with this memorandum will follow.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES BRESLIN, PAUL** | : | |
| **CUNNINGHAM, and PHILLIP** | : | |
| **THOMPSON,** | : | |
| **Plaintiffs,** | : | **Civil Action No. 1:09-cv-1396** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DICKINSON TOWNSHIP, RAYMOND** | : | |
| **JONES, ALLYN PERKINS, DANIEL** | : | |
| **WYRICK, ANTHONY ZIZZI, RONALD** | : | |
| **REEDER, and EDWARD SCHORPP,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, this 18th day of August 2010, upon consideration of Defendants' motions to dismiss (Doc. Nos. 39, 41), **IT IS HEREBY ORDERED** that the motions are granted in part and denied in part. The motions are **GRANTED** with respect to all claims EXCEPT the claims that:

1.  Defendant Jones violated Plaintiffs' First Amendment rights by prohibiting their speech at Township meetings;

2.  Defendant Jones retaliated against Plaintiffs by curtailing their speech at Township meetings in 2008;

3.  Defendants Jones and Schorpp retaliated against Plaintiffs Breslin and Thompson for failing to disclose public documents pursuant to valid document requests.

Defendants Reeder, Zizzi, and Perkins are **DISMISSED**. **IT IS FURTHER ORDERED** that Plaintiffs' motion to amend complaint (Doc. No. 63) is **DENIED as filed.** Plaintiffs are given twenty (20) days from the date of this order to file a new motion to amend their complaint, if doing so would not be inequitable or futile upon consideration of the guidelines provided in

24

the foregoing memorandum.

                                   S/ Yvette Kane
                                   Yvette Kane, Chief Judge
                                   United States District Court
                                   Middle District Pennsylvania