## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES BRESLIN, et al.,** | : | **Civil No. 1:09-CV-1396** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DICKINSON TOWNSHIP, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION AND ORDER

### I.    Statement of Facts and of the Case

This case is a civil rights action brought by the Plaintiffs against Defendants, various local township officials, alleging constitutional First Amendment and First Amendment-retaliation claims. Following contentious discovery proceedings, this case was referred to the undersigned on January 25, 2011, for the purpose of overseeing pre-trial discovery.  (Doc. 77.)

On March 17, 2011, the parties each separately requested that the Court schedule a discovery conference to address these on-going discovery disputes. (Docs. 94 and 95.) The Court promptly responded to these concerns, scheduling and conducting a discovery conference with all counsel on March 24, 2011. (Doc. 96.) At the close of this conference, the Court entered an order setting a discovery litigation schedule in this case. This schedule was largely animated by concerns voiced by the

Plaintiffs' counsel regarding delays in this litigation, and set a 30-day schedule for

resolving pending discovery disputes, providing in clear and precise terms as follows:

> 1. [T]he parties shall exchange written communications on or before **March 28, 2011**, identifying specifically what documentary discovery each party is still seeking from the opposing party. Between **March 28 and April 11, 2011** the parties shall jointly address, and resolve, all of these pending documentary discovery issues that are capable of resolution without rulings by the court.
>
> 2. The parties shall **jointly** advise the Court, in writing, of any remaining disputes regarding the production of documents in this case not later than **Monday, April 11, 2011**.
>
> 3. To the extent that any such disputes regarding document production remain after April 11, 2011, the parties may file motions seeking judicial resolution of these disputes not later than **Friday, April 15, 2011**.
>
> 4. The parties may respond to any motion filed regarding document production not later than **Friday, April 22, 2011**.
>
> 5. The parties shall meet and confer to determine the depositions that will be taken in this action, and to schedule such depositions so that the depositions may be taken on and after **Monday, May 16, 2011**, unless capable of being taken earlier. The parties are directed to schedule these depositions collaboratively in consultation with one another, and are not to unilaterally schedule these depositions. The parties are further instructed to report to the court on the completion of this deposition scheduling on or before **April 22, 2011.**

(Doc. 97.)

Despite having actively sought the Court's intervention in these discovery

matters, (Doc. 95), the Plaintiffs' counsel has, regrettably, largely neglected the

2

deadlines which he had asked the Court to impose in order to facilitate discovery. Thus, Plaintiffs' counsel ignored the April 15, 2011 deadline set by the Court for the filing of discovery motions.[1]  When the Defendants filed a timely motion to compel discovery, (Doc. 103), the Plaintiffs' counsel then chose not to respond to that motion to compel by April 22, 2011, as previously directed by the Court. The Plaintiffs' counsel then failed to comply with the Court's order, which also directed the parties

---

[1]The failure to comply with this simple and explicit deadline is particularly puzzling since the Plaintiffs' counsel has filed letters complaining about discovery and promising to file appropriate motions, (Doc. 104-1), but has never taken the simple step of filing a proper discovery motion, as directed by the Court, in accordance with the deadlines prescribed by the Court. Furthermore, while Plaintiffs' counsel has not complied with this scheduling order, he has submitted letters to the Court suggesting that he will eventually seek "an extraordinary writ" from the court of appeals to secure discovery. (Doc. 100.) This is a curious litigation strategy, one which foregoes offers of assistance from the court, ignores timetables for the filing of conventional discovery motions set by the Court, and eschews an obvious, orderly litigation path in favor of seeking some form of extraordinary writ from the appellate court. This course chosen by Plaintiffs' counsel may be ill-advised since such a writ is "a drastic remedy that 'is seldom issued and its use is discouraged.' " In re Patenaude, 210 F.3d 135, 140 (3d Cir. 2000), (quoting Lusardi v. Lechner, 855 F.2d 1062, 1069 (3d Cir. 1988)). Thus, as a general rule: "There are two prerequisites to issuing a[n extraordinary writ, Plaintiffs] must show that (1) they have no other adequate means to attain their desired relief; and (2) their right to the writ is clear and indisputable. See In re Patenaude, 210 F.3d 135, 141 (3d Cir. 2000); Aerosource, Inc. v. Slater, 142 F.3d 572, 582 (3d. Cir. 1988)." Hinkel v. England, 349 F.3d 162, 164 (3d Cir. 2003). Since such a writ requires a showing that the plaintiffs have no other adequate means to attain their desired relief, the fact that these plaintiffs actually had such means available to them but simply declined to file a timely discovery motion may be fatal to the course threatened by counsel.

to confer and report to the Court regarding the scheduling of depositions by April 22, 2011, a matter that previously had been an issue of urgency for the Plaintiffs' counsel.

Sadly, these shortcomings are not an isolated incident. This curious decision to ignore the very Court deadlines which Plaintiffs' counsel previously urged us to impose is just the latest in a series of procedural defaults by counsel, who has in the past year repeatedly failed to comply with a series of litigation deadlines to the prejudice of his clients' interests. See e.g., Lease v. Fishel,  712 F.Supp.2d 359 (M.D.Pa. 2010)(failure to comply with sanctions motion response deadline); Snyder v. Bender, No. 09-927, 2010 WL 5110556 (M.D. Pa. Dec. 9, 2010)(failure to comply with briefing deadline);  Snyder v. Bender, No. 09-927, 2011 WL 1085692 (M.D. Pa. Mar. 21, 2011)(failure to timely file amended complaint). For the sake of his clients, counsel is urged to be more attentive to these litigation deadlines and responsibilities.

 Despite the puzzling, and unfortunate, decision by Plaintiffs' counsel to forego all of these deadlines, some of the discovery disputes now before the Court are ripe for resolution. Specifically, the Defendants have filed a motion to compel, which seeks discovery of several specific matters, and other forms of relief. (Doc. 103.) That discovery motion has been briefed by the Defendants, and the Plaintiffs have elected

to allow the deadline for filing an opposition to the motion to pass without any action on their part. Therefore, this motion is ripe for resolution.

For the reasons set forth below, the Defendants' motion to compel will be granted, in part, and denied, in part.

## II.   <u>Discussion</u>

### A.   <u>Given the Failure of the Plaintiffs' Counsel to Comply With the Briefing Schedule Set By This Court, the Defendants' Motion May Be Deemed Unopposed</u>

In considering this discovery motion, we begin with a regrettable, but immutable and unavoidable fact. The Plaintiffs' counsel has for reasons that are unknown, elected to discount the deadlines set by this Court, and disregard the schedule set by the Court for the benefit of all parties after Plaintiffs' counsel actively sought action from the Court to set a schedule to expedite discovery. The puzzling refusal of the Plaintiffs' counsel to abide by this schedule, at the very time that counsel was urging action on discovery matters, frustrates the orderly resolution of these issues, and threatens to prejudice the interests of the Plaintiffs that counsel represents. Moreover, under the Local Rules of the Court, a party, like the Plaintiffs, who fails to timely oppose a motion is deemed not to oppose that motion. <u>See</u> Local Rule 7.6. Therefore, the inaction of Plaintiff's counsel now threatens to forfeit his clients' rights

and harm their interests. This failure to act is particularly unfortunate since the
necessity of compliance with Court orders has been underscored for the Plaintiffs'
counsel on numerous occasions. See e.g., Lease v. Fishel, 712 F.Supp.2d 359
(M.D.Pa. 2010)(failure to comply with sanctions motion response deadline); Snyder
v. Bender, No. 09-927, 2010 WL 5110556 (M.D. Pa. Dec. 9, 2010)(failure to comply
with briefing deadline); Snyder v. Bender, No. 09-927, 2011 WL 1085692 (M.D. Pa.
Mar. 21, 2011)(failure to timely file amended complaint). Nonetheless, Plaintiffs'
counsel has not complied with this Court's order, by either filing a timely discovery
motion, or responding in a timely manner to the Defendants' motion to compel.
Therefore, this procedural default compels the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice. *See*
> Fed. R. Civ. P. 1. Often that will mean that courts should strive to resolve
> cases on their merits whenever possible. However, justice also requires
> that the merits of a particular dispute be placed before the court in a
> timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157
> F.3d 191, 197 (3d Cir.1998)

Lease v. Fishel, 712 F.Supp.2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we recognize a fundamental guiding tenet of our
legal system. A failure on our part to enforce compliance with the rules, "would
actually violate the dual mandate which guides this Court and motivates our system
of justice: 'that courts should strive to resolve cases on their merits whenever possible

[but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unreasonable delay in adjudicating the claims of those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the Plaintiffs have failed to either move for discovery in accordance with the timetable set by the Court, or comply with this Court's order by filing a timely response to the Defendants' motion to compel. Therefore, we are entitled to deem the Plaintiffs to have elected not to seek discovery themselves or to oppose the defense motion for discovery. See, e.g., Salkeld v. Tennis, 248 F. App'x 341 (3d Cir. 2007)(affirming dismissal of motion under Local Rule 7.5); Prinkey v. Tennis, No. 09-52, 2010 WL 4683757 (M.D. Pa. Nov. 10, 2010)(dismissal under Local Rule 7.5); Griffin v. Lackawanna County Prison Board, No. 07-1683, 2008 WL 4533685 (M.D. Pa. Oct. 6, 2008)(dismissal under Local Rule 7.6). Because the Plaintiffs' counsel has ignored the motions deadline set by the Court at counsel's request, the Plaintiffs will be deemed to have waived their right to file such motions. While these defaults would also justify entry of a judgment in favor of the Defendants on their motion to compel, as a matter of fairness to the individual Plaintiffs, we will consider the merits of these defense discovery requests.

### B.    Motions to Compel Discovery–Guiding Principles

In their motion to compel the Defendants seek four forms of relief. First, the Defendants request that the Plaintiffs be ordered to provide their Social Security numbers to the Defendants, so the Defendants may use this information to obtain military and medical records from third parties. Second, the Defendants ask that the Plaintiffs be compelled to disclose any user names, aliases, or pen names used by the Plaintiffs when posting comments in online public forums. Third, the Defendants seek an order of Court directing the Plaintiffs or their counsel: (1) to fully respond to an interrogatory seeking disclosure of the factual basis for assertions set forth in the Plaintiffs' complaint; and (2) to attest under oath to the completeness of the documentary discovery disclosures made by the Plaintiffs. Fourth, and finally, the Defendants request reimbursement of some of the expenses which they incurred in ordering copies of documents produced by the Plaintiffs, alleging that the bill for copying these records was excessive in several respects.

Several basic guiding principles inform our resolution of the merits of these discovery disputes. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

(a) Motion for an Order Compelling Disclosure or Discovery

(1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

(1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.   Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Fed. R. Civ. P. 26(b)(1)

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the

9

scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court.   Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Accordingly, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion.   Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

This discretion is guided, however, by certain basic principles. At the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the Court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information"  a concept which is defined in the following broad terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

The party seeking discovery must make a threshold showing that the items sought in the discovery request are reasonably calculated to lead to the discovery of admissible evidence. Once this showing is made, "the party resisting the discovery [then]  has the burden to establish the lack of relevance by demonstrating that the

requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

With these guiding principles in mind we turn to the individual discovery requests set forth in the Defendants' motion to compel.

### 1.     The Plaintiffs Shall Be Compelled to Provide Their Social Security Numbers to the Defendants

At the outset, we find that the Defendants are entitled to obtain the Plaintiffs' Social Security numbers. As the Defendants have explained in their motion and brief, they seek this information in order to obtain medical and military records from third parties. These records would contain information relevant to the Plaintiffs' damages claims, which are grounded largely upon claims that the individual Plaintiffs have suffered physical and emotional distress due to the allegedly retaliatory actions of the Defendants, since these records would provide medical histories of the Plaintiffs, medical histories which would reveal the extent to which they have suffered physical or emotional distress.

Thus, these medical records have obvious relevance to any damages claims brought by the Plaintiffs that are premised upon physical or emotional distress allegedly caused by the Defendants' conduct. Therefore, securing the Social Security account  information that is necessary for obtaining these medical records from third parties is clearly a relevant inquiry under Rule 26 of the Federal Rules of Civil Procedure. Moreover, courts which have considered similar discovery requests in the past have routinely ordered plaintiffs to disclose their Social Security numbers when that information has some relevance to a claim, or defense, in the litigation. For example:

> The disclosure of names, addresses, Social Security numbers, and employment dates of putative class members is a common practice in the class action context. It has been used, so that putative class members can be located, in a variety of contexts, including under the Fair Labor Standards Act. E.g., Patton v. Thomson Corp., 364 F.Supp.2d 263 (E.D.N.Y.2005) (Social Security numbers of putative class members ordered disclosed, subject to appropriate confidentiality agreement, in class action under FLSA); Upshaw v. Georgia Catalog Sales, Inc., 206 F.R.D. 694 (M.D.Ga.2002) (in class action under RICO and state usury law, lender ordered to provide class list that included names, last known addresses, telephone numbers and social security numbers); Babbitt v. Albertson's Inc.. 1992 WL 605652 (N.D.Cal.1992) (at pre-certification stage of proposed Title VII class action, defendant employer ordered to disclose names, addresses, telephone numbers and social security numbers of current and past employees); Nat'l Assoc. for the Advancement of Colored People v. Boston Housing Authority, 723 F.Supp. 1554 (D.Mass.1989) (court approved stipulation and settlement agreement entered in class action under Title VI of the

> Civil Rights Act whereby plaintiff's counsel would be provided with names, last known addresses and social security numbers of all class members); <u>Marcus v. Bowen</u>, 1989 WL 39709 (N .D.Ill.1989) (in class action involving method for determining entitlement to disability benefits under the Social Security Act, 42 U.S.C. §§ 401, et seq., court held that plaintiffs' counsel was entitled to names, addresses and social security numbers of identified class members); <u>Johnson v. Heckler</u>, 604 F.Supp. 1070 (N.D.Ill.1985) (in class action involving standard to be applied under Social Security Act for determining whether severe impairment exists, Commissioner of Social Security ordered to report to plaintiffs' counsel every four weeks with a list of the names and social security numbers of identified class members).

<u>Rees v. Souza's Milk Transp., Co.</u>, No. 05-297, 2006 WL 3251829, *1 (E.D.Cal. Nov. 8, 2006). Similarly, outside the context of class action litigation, courts have frequently ordered disclosure of this information, finding that "the discovery of background information such as name, address, telephone number, date of birth, driver's license number, and social security number is considered routine information in almost all civil discovery matters." <u>Gober v. City of Leesburg</u>, 197 F.R.D. 519, 521 n.2 (M.D.Fla. 2000). <u>See also</u> <u>Pearson v. Heavey</u>, No. 96-3863, 1997 WL 159656 (S.D.N.Y. April 3, 1997). In sum since the request for this information is clearly calculated to lead to the discovery of relevant evidence, requests of this type are routinely approved by the courts, and the Plaintiffs have not shown cause why this particular request should not be granted, the motion to compel disclosure of the Plaintiffs' Social Security numbers will be granted.

**2.     The Plaintiff Shall Be Compelled to Disclose Any Pen Names Used by the Plaintiffs When Posting Comments in Online Public Forums**

In their motion to compel, the Defendants also request that the Plaintiffs be required to disclose all pen names they have used when posting comments in online public forums. Like the request for Social Security number information, this discovery request is supported by a specific showing that the requested material is relevant to the issues in this litigation. Specifically, the Defendants have explained that they seek this information in order to show that the Plaintiffs' First Amendment rights were in no way chilled by the Defendants' actions, since the Plaintiffs are alleged to have continued a robust public commentary regarding the Defendants in various online public forums throughout the course of this litigation.

Given this proffer of relevance we have little difficulty concluding that this information is subject to discovery under Rules 26 of the Federal Rules of Civil Procedure. Furthermore, where, as here, it is shown that Plaintiffs' use of other names is relevant to issues in a lawsuit, those other names are plainly discoverable. See Frank v. City of Manchester, No. 09-389, 2010 WL 4720121(D.N.H. Nov. 15, 2010)(ordering disclosure of plaintiff's aliases). Therefore, to the extent that the Defendants seek an order compelling the Plaintiffs' to disclose all aliases or pen names used in online public forums, this motion will be granted.

14

3. **The Plaintiffs Will Not Be Compelled to Attest to the Accuracy of Their Document Production But The Plaintiff Will be Required to Answer An Interrogatory Which Requests Information Regarding the Factual Basis for Certain of the Plaintiffs' Claims**

Citing alleged confusion and discrepancies in document productions by the Plaintiff, the Defendants also request in this motion that the Plaintiffs, or their counsel, be compelled to swear to the completeness of these document productions.

In addition, the Defendants seek an order compelling the Plaintiffs to fully respond to the Defendants' Interrogatory No. 10, which requests that the Plaintiffs: "Set forth, in detail, all facts and evidence that support the allegations of Paragraph 107 of your Amended Complaint."

To the extent that the Defendants invite us to impose a written sworn attestation requirement upon the Plaintiffs when responding to requests for production of documents, we will decline this request. In our view, nothing in Rule 34 of the Federal Rules of Civil Procedure, which governs requests for production of documents, calls for sworn attestations of the type sought here by the Defendants. Since a sworn attestation is not called for by the rule governing this form of discovery, we will not impose a requirement on the Plaintiffs beyond the requirements already prescribed by law.

15

We do note, however, that those requirements set by law include a requirement by parties to make full disclosures, and to promptly supplement any discovery, including prior disclosures of documents. See Fed. R. Civ.  P. 26(e). Moreover, should any of the parties fail to abide by their obligation to timely and fully disclose documents, they are subject to an array of sanctions and penalties. See Fed. R. Civ. P. 37.  Since these obligations already exist on all parties, and these sanctions are available to any party which can show that complete discovery has not been made, the additional requirement proposed by the Defendants that the Plaintiffs swear to the accuracy of their document productions is unnecessary, and will not be imposed by the Court.

However, to the extent that the Defendants seek a full answer to Interrogatory No. 10, which  requests that the Plaintiffs: "Set forth, in detail, all facts and evidence that support the allegations of Paragraph 107 of your Amended Complaint," we find that the Defendants are entitled to an answer detailing the facts supporting the Plaintiffs' claims. Indeed, it has long been held that parties may, by interrogatory, demand to know the factual basis for allegations leveled against them in litigation.  See e.g., United States v. Aluminum Ltd., 268 F.Supp. 758 (D.N.J. 1966); Needles v. F.W. Woolworth Co., 13 FRD 460 (E.D.Pa. 1952). Since this discovery request is undeniably proper, it deserves a full and complete response and

16

the Defendants' motion to compel an answer to Interrogatory No. 10 will be granted.

**4.      The Defendants' Request for Reimbursement of Costs Associated With the Production of Documents Will Be Granted In Part**

Finally, in their motion to compel the Defendants seek reimbursement of certain costs which they paid for production of documents by the Plaintiffs. With respect to this aspect of their motion to compel, the pertinent facts are as follows: Recently, the Defendants agreed to reimburse the Plaintiffs for the costs to reproduce their most recent document production. Pursuant to this agreement, on April 5, 2011, the Plaintiffs forwarded a letter stating that the production consisted of 1,890 pages and that the cost would be $.15 per page, for a total of $283.50. (Doc. 103, Ex. L.) The Plaintiffs' counsel also demanded payment for the documents prior to their release. (Id.) The Defendants assert that they agreed to the Plaintiffs' counsel's payment demand to avoid further disputes and to ensure that the documents were received in a timely manner. However, upon reviewing the documents, the Defendants have identified the following alleged discrepancies in the costs incurred for reproduction of these records:

(a) the total number of pages produced is actually 1,802, not 1,890 (88 pages);

(b) pages 103-189 are exact duplicates of pages 3-90 (88 pages);

(c) pages 407-619 are exact duplicates of pages 192-404 (213 pages); and

(d) pages 196-204 are Bates-numbered but are otherwise completely blank (9 pages).

Thus, according to the Defendants, of the represented 1,890 pages of documents, a total of 398 pages either do not exist, are page-for-page duplicates, or are blank. Therefore, the Defendants seek reimbursement of $59.70, which represents the cost for reproducing these 398 pages of material. ($.15 x 398 = $59.70).

We believe that this request should only be granted in part. To the extent that the Plaintiffs billed the Defendants to produce 1,890 pages but only produced 1802 pages of material, we find that it is appropriate for Plaintiffs' counsel to reimburse the Defendants for the payments made for copying 88 pages of material that were billed to the Defendants, but never produced. However, to the extent that the full production sought by the Defendants from the Plaintiffs consisted of some materials that were duplicate copies, or some pages that were blank, we do not believe that reimbursement of these expenses is appropriate. Given the disputes over document production that have plagued this litigation, the Plaintiffs were justified in concluding that they should not unilaterally cull records from this document production. Instead, the Plaintiffs properly produced everything they possessed,

even if some aspects of that production were duplicative. To the extent that some culling of these records was necessary before they were copies, it was incumbent upon the Defendants to make these assessments. These costs could have been avoided by the Defendants by simply reviewing the materials prior to requesting that they be copied. Accordingly, balancing these equities we conclude with respect to this request, that the Defendants' motion should only be granted in part, and the Plaintiffs will be ordered to reimburse the Defendants $13.20, representing the difference in cost between what was billed, 1,890 pages, and what was actually produced, 1,802 pages.

### III.   **Conclusion**

Accordingly, for the foregoing reasons, the Defendant's motion to compel (Doc. 103), is GRANTED in part and DENIED in part as follows:

1.   On or before, **May 6, 2011**, the Plaintiffs shall provide their Social Security numbers and all pen names they have used when posting comments in online public forums to the Defendants.

2.   On or before **May 6, 2011**, the Plaintiffs' shall be required to provide a full and complete answer to the Defendants' Interrogatory No. 10.

3.     On or before **May 6, 2011**, the Plaintiffs' counsel shall be required to reimburse the Defendants $13.20 in connection with the production of documents in this litigation.

The Defendants remaining requests  to compel discovery will be DENIED.

So ordered this 26th  day of April, 2011.


_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge