# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES BRESLIN, et al., | : | Civil No. 1:09-CV-1396 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | (Judge Stengel) |
| | : | |
| DICKINSON TOWNSHIP, et al., | : | (Magistrate Judge Carlson) |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION AND ORDER

### I.  Introduction

On March 4, 2011, Plaintiffs' counsel informed this Court that: "I love my fellow man, believe it or not. You probably wouldn't even believe that *I love you*." Snyder v. Bender, No. 1:09-CV-927 (Doc. 75, p.5, emphasis added.)

On March 24, 2011, in a conference held in this case, Plaintiffs' counsel volunteered to swear to the Court's integrity, fairness and affability, stating:

> You haven't done anything improper. I've been impressed with you, not only your affability, but your fairness. So judge, I'm not complaining at all. I will swear.

(Doc. 106, p. 4.)

Plaintiffs' counsel repeated these observations later during this March 24, 2011 conference, informing the Court that: "I notice when I called here the other day how affable you were. I was very impressed." (Doc. 106, p.34.)

On May 6, 2011, 43 days later, Plaintiffs' counsel moved to recuse this Court, alleging that the Court was unfair and biased. (Docs. 119 and 120.)

One might well ask: What dramatic intervening events occurred in the span of a mere 43 days to transform the Court in the eyes of Plaintiffs' counsel from loveable, affable and fair to biased and subject to recusal?

Three things.

First, at the urging of Plaintiffs' counsel, we set an expedited schedule for the resolution of discovery issues in this case.

Second, Plaintiffs' counsel inexplicably failed to comply with the schedule that the Plaintiffs asked us to set, and failed to respond a defense motion to compel.

Third, we then did what a Court is supposed to do: We ruled upon this uncontested motion to compel.

Because we find that the performance of our duties is not grounds for recusal, and further conclude that the grounds recently advanced by the Plaintiffs' counsel do not call into doubt the prior observations of this attorney that: "I've been impressed

with you, not only your affability, but your fairness. So judge, I'm not complaining at all. I will swear," (Doc. 106, p. 4), we will deny this motion to recuse.

## II. Statement of Facts and of the Case

Some brief factual context is helpful in understanding the current motion to recuse. This case is a civil rights action brought by the Plaintiffs against Defendants, various local township officials, alleging constitutional First Amendment and First Amendment-retaliation claims. Following contentious discovery proceedings, this case was referred to the undersigned on January 25, 2011, for the purpose of overseeing pre-trial discovery.(Doc. 77.)

We then promptly scheduled a telephone conference in this case with all counsel on February 5, 2011. (Doc. 83.) At this conference, the Court had a full opportunity to address a host of discovery issues for the parties, and spoke to a concern voiced by Plaintiffs' counsel, who expressed a fear that in an earlier meeting of counsel, defense counsel may have had an *ex parte* telephone contact with the Court.(Id., pp. 18-26.) In response to this concern voiced by Plaintiffs' counsel, both the Court and defense counsel stated that no *ex parte* communication had occurred. Rather, defense counsel simply spoke to the Court's deputy clerk, who advised counsel that the parties should address any disputes at their meeting among themselves. (Id.)

On February 5, 2011, Plaintiffs' counsel expressed complete and total satisfaction with the information provided by the Court on this score, stating: "I very much appreciate your bringing it up", (id., p.18), and affirming counsel's view of the Court's fairness in this regard, asserting: "I appreciate your response. I can't tell you how happy it makes me, because you know what, I didn't think you'd do that." (Id., p.20.) Plaintiffs' counsel then on to make two observations, stating to the Court that he was " [v]ery grateful with your candor', (id., p. 20), while suggesting that he might wish to send the Court an *ex parte* letter. (Id. ,"Maybe just a letter form to you? Do you want me to copy it to the other counsel?")

We declined this invitation by Plaintiffs' counsel to indulge in some form of *ex parte* communication and instead advised all counsel as follows regarding the rules for communication with the Court:

> THE COURT: Anything -- just as you appropriately asked that any communications from the other side be transparent, if you are going to send me a further letter on this issue, you should make sure the other side receives a copy of it. Is that fair?
>
> MR. BAILEY: Yes, sir. Yes, sir, I will do that.
>
> THE COURT: Is that fair from the point of view of the Defendants?
>
> MR. MORGANSTERN: That is fair, Your Honor.

(Id., 20-21.)

On March 17, 2011, the parties then each separately requested that the Court schedule a discovery conference to address other on-going discovery disputes. (Docs. 94 and 95.) In connection with this request, Plaintiffs' counsel called chambers during the lunch hour with a simple logistical question regarding whether the Court would accept a letter request for a conference, and the Court answered the telephone. The Court then addressed counsel's question, advising counsel that a letter request for a conference would be sufficient. Once Plaintiffs' counsel submitted such a letter, the Court then promptly responded to these concerns, scheduling and conducting a discovery conference with all counsel on March 24, 2011. (Doc. 96.)

At the outset of this conference, the Court notified all counsel that it had engaged in a brief telephonic exchange with Plaintiffs' counsel concerning the scheduling of this conference. (Doc. 106, p.2.) The Court took this step in order to ensure that all parties were fully informed of any communications between chambers and litigants, and the Court's disclosure inspired the following observations from Plaintiffs' counsel:

> You haven't done anything improper. I've been impressed with you, not only your affability, but your fairness. So judge, I'm not complaining at all. I will swear.

(Doc. 106, p. 4.)

Later Plaintiffs' counsel repeated these observations, while confirming his own, brief, *ex parte* communications with the Court stating that: "I notice when I called here the other day how affable you were. I was very impressed." (Doc. 106, p.34.)

At the close of this conference, the Court then entered an order setting a discovery litigation schedule in this case. This schedule was largely animated by concerns voiced by the Plaintiffs' counsel regarding delays in this litigation, and in clear and precise terms set a 30-day schedule for resolving pending discovery disputes. (Doc. 97.)

Despite having actively sought the Court's intervention in these discovery matters, (Doc. 95), the Plaintiffs' counsel, regrettably, largely neglected these deadlines, failing to comply with the April 15, 2011, deadline set by the Court for the filing of discovery motions, and ignoring an April 22, 2011, deadline for responding to a motion to compel filed by the Defendants.[1] Despite the decision by Plaintiffs' counsel to forego all of these deadlines, we independently assessed the merits of these

---

[1] Sadly, these shortcomings were not an isolated incident, but were just the latest in a series of procedural defaults by counsel, who has in the past year repeatedly failed to comply with a series of litigation deadlines to the prejudice of his clients' interests. See e.g., Lease v. Fishel, 712 F.Supp.2d 359 (M.D.Pa. 2010)(failure to comply with sanctions motion response deadline); Snyder v. Bender, No. 09-927, 2010 WL 5110556 (M.D. Pa. Dec. 9, 2010)(failure to comply with briefing deadline); Snyder v. Bender, No. 09-927, 2011 WL 1085692 (M.D. Pa. Mar. 21, 2011)(failure to timely file amended complaint).

6

discovery demands made by the Defendants and found that the Defendants were entitled to some, but not all, of the relief which they sought in their motion to compel.

While the Plaintiffs' counsel chose not to contest this discovery motion when it was filed, and had previously attested to the affability, fairness and integrity of the Court, on May 6, 2011, counsel moved to recuse this Court, now claiming that the Court was unfair and biased. (Doc. 119. ) That motion to recuse has been fully briefed by the parties, (Docs. 120 and 123)[2], and is ripe for resolution.

For the reasons set forth below, the motion will be denied.

**II.     Discussion**

    **A.     Recusal of This Court is Not Warranted**

Turning to this recusal motion, we note, sadly, that such motions and accusations are becoming an increasingly familiar refrain by the Plaintiffs' counsel, whose response to past efforts by the courts to ensure appropriate professional conduct on his part has been to repeatedly file recusal motions against the presiding judges in these cases. Conklin v. Warrington Township, 476 F.Supp.2d 458 (M.D. Pa. 2007)(denying recusal motion). The substance of these motions is also an increasingly familiar, and fanciful theme: complaints that the Court is part of a large,

---

[2]We had also afforded the Plaintiffs an opportunity to file a reply brief in support of their motion, but the Plaintiffs' counsel neglected to file any such reply brief in accordance with the schedule set by the Court.

amorphous conspiracy. <u>Beam v. Bauer</u>, 151 F. App'x 142, 144 (3d Cir. 2005) (awarding attorneys' fees against attorney, who requested investigation of trial judge, and alleged that the district court "set him up", holding that "Counsel's tirade against [district judge] is unfounded and unprofessional....")

While Plaintiffs' counsel's current motion does not address the legal standards governing recusal, those standards are clear and well-known by counsel. The legal standards which govern such recusal requests were aptly summarized in <u>Conklin v. Warrington Township</u>, 476 F.Supp.2d 458 (M.D. Pa. 2007), a case which considered, and rejected, one of counsel's prior recusal motions filed in the midst of other court proceedings. In terms that are equally applicable here, the Court explained to counsel that:

> The disqualification standard is set forth in 28 U.S.C. § 455, which provides in pertinent part as follows:
>
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party....
>
> <u>Id</u>. Pursuant to the above quoted language, the court must consider whether its rulings and statements objectively produce the appearance of bias against Conklin. As explained by the Supreme Court, these provisions "require ... 'bias and prejudice' ... to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." <u>Liteky v. United States</u>,

510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). This objective standard requires recusal when a "reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.1987) (citing United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir.1983)); see also In re Antar, 71 F.3d 97, 101 (3d Cir.1995). If the record presents a close question, the court must resolve the issue in favor of disqualification. Nichols v. Alley, 71 F.3d 347, 352 (10th Cir.1995).

Id. at 462-3.

It is clear, however, that a party's disappointment with what the party anticipates may be the Court's rulings cannot form the basis for recusal. As we have observed:

> The Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)). Subsections 455(a) and (b)(1) require the source of bias to be extrajudicial, that is stemming from a source outside of the proceeding, or of such an intensity as to make a fair trial impossible. Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253 (3d Cir.1995), cert. denied, 516 U.S. 915, 116 S.Ct. 303, 133 L.Ed.2d 208 (1995). As stated by the Supreme Court:
>
> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an

>extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.
>
>Liteky, 510 U.S. at 555, 114 S.Ct. 1147 (emphasis in original).

Id. at 463.

Furthermore, in assessing recusal requests, courts must remain mindful that, in the hands of some unscrupulous advocates, a recusal motion may simply be a calculated tactical tool designed to avoid the result which the law dictates in a case. Thus, in every instance:

>[T]he court must consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings. In re Antar, 71 F.3d at 101; Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir.1993). Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002) (quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see also United States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998).

Id. at 463.

In order to ensure that recusal requests do not become last-minute devices used by expedient counsel to attempt to avoid outcomes mandated by law, a recusal motion is "also subject to the requirement that it be 'timely.' See 28 U.S.C. § 144. 'It is well-settled that a party must raise its claim of a district court's disqualification at

the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.' Apple v. Jewish Hosp. and Medical Ctr., 829 F.2d 326, 333 (2nd Cir.1987). The Third Circuit has described this requirement as one of 'reasonable diligence.' See Furst, 886 F.2d at 581 n. 30." Cooney v. Booth, 262 F.Supp.2d 494, 503-4 (E.D.Pa. 2003), aff'd., 108 F.App'x 739 (3d. Cir. 2004).

In addition, it is clear that a party's use of invective toward the court cannot create recusal grounds since:

> There is a "well established judicial rejection of a rule that would permit a litigant or attorney to disqualify a judge by criticizing him." United States v. Evans, 262 F.Supp.2d 1292, 1296 (D.Utah 2003) (quoting United States v. Helmsley, 760 F.Supp. 338, 342-43 (S.D.N.Y.1991)). In other words, a litigant cannot unilaterally create the grounds for recusal. See In re Mann, 229 F.3d 657, 658-59 (7th Cir.2000) (filing of judicial misconduct charge in reaction to court's decision insufficient ground for disqualification). As [one court] has observed: "A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because the aspersions, *ex propio vigore,* create a cloud on her impartiality." In re United States, 158 F.3d at 35.

Conklin, 476 F.Supp.2d at 464.

Finally, there are also procedural standards which a party moving for recusal must meet. These standards are prescribed by 28 U.S.C. § 144, which as a procedural matter "mandates recusal '[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the

11

matter is pending has a personal bias or prejudice either against him or in favor of any adverse party.' Conklin, 476 F.Supp.2d at 463 n. 10. Thus, a proper, and timely filed, affidavit is a legal prerequisite to a recusal motion, a necessary step to impress upon all parties the gravity of the proceedings. When such an affidavit is timely filed: "it is the responsibility of the district judge against whom an affidavit is filed to assess the legal sufficiency of the affidavit. United States v. Townsend, 478 F.2d 1072, 1073 (3d Cir.1973) (stating that the mere filing of an affidavit 'does not automatically disqualify a judge'). An affidavit is legally sufficient if the facts alleged therein: (1) are material and stated with particularity; (2) would convince a reasonable person that a bias exists; and, (3) evince bias that is personal, as opposed to judicial in nature. United States v. Thompson, 483 F.2d 527, 528 (3d Cir.1973)." Conklin, 476 F.Supp.2d at 463 n. 10. This is a burden which cannot be met through vague and conclusory accusations, or subjective assertions. Id. (citing Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990) (holding that, to be legally sufficient, an affidavit must contain more than mere conclusory allegations)); Cooney v. Booth, 262 F.Supp.2d 494, 502 (E.D.Pa.2003) (holding that opinions and conclusions based upon conjecture and speculation are legally insufficient to warrant recusal).

Judged against these legal standards, we must decline the Plaintiffs' motion that we recuse ourselves from this case. In this case, Plaintiffs' counsel seeks recusal

of the Court on the basis of a conclusory affidavit which makes two factual assertions, assertions which are untimely, discredited, and legally insufficient to warrant recusal. In this affidavit and in their motion to recuse, the Plaintiffs, ironically, cite a prior opinion by the Court denying a recusal request in an unrelated case, which we issued 13 months ago, as grounds for recusal. Lease v. Fishel, 712 F.Supp.2d 359 (M.D.Pa. 2010). (Docs. 119, 120, 120-1)The Plaintiffs then resurrect a factually bankrupt claim that they previously abandoned, suggesting that there has been *ex parte* communication between the Court and defense counsel in the course of this litigation.(Id.)

These claims fail for several reasons. At the outset, we remain mindful of the fact recusal motions must "be 'timely.' See 28 U.S.C. § 144. 'It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.' Apple v. Jewish Hosp. and Medical Ctr., 829 F.2d 326, 333 (2nd Cir.1987), " Cooney v. Booth, 262 F.Supp.2d 494, 503-4 (E.D.Pa. 2003), aff'd., 108 F.App'x 739 (3d. Cir. 2004). Here, we find that this motion to recuse is both untimely and expedient. Indeed, in many instances the grounds of recusal cited in the motion relate to matters which either: (1) occurred in an unrelated case 13 months ago, or (2) entailed allegations in this case that were addressed by the Court and resolved to the

Plaintiffs' counsel's full satisfaction three months ago. All of these matters significantly preceded the March 24, 2011 conference in this case, in which Plaintiffs' counsel volunteered to swear to the Court's integrity, fairness and affability, stating:

> You haven't done anything improper. I've been impressed with you, not only your affability, but your fairness. So judge, I'm not complaining at all. I will swear.

(Doc. 106, p. 4.)

Thus, none of these temporally remote events which preceded counsel's unqualified assertion of the Court's fairness provide legally sufficient grounds for recusal.

The Plaintiffs' counsel also cites an adverse ruling by this Court in April of 2011 on a discovery motion which counsel neglected to oppose as grounds for recusal. Yet such a claim is plainly inadequate to justify recusal since it is absolutely clear that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)). This principle applies with equal force to the Plaintiffs' belated and novel claim that our prior ruling in April 2010, denying a recusal motion filed by counsel in an unrelated case, Lease v. Fishel, 712 F.Supp.2d 359 (M.D.Pa. 2010), now forms the basis for our recusal, and

compels rejection of that claim as well.[3] Furthermore, to the extent that Plaintiffs' counsel cites to these prior rulings as part of an endeavor to suggest that these rulings reflect a deep-seated bias by the Court, Plaintiffs' counsel neglects to disclose facts known to him which completely rebut this suggestion. Specifically, as Plaintiffs' counsel well knows, this Court has often ruled in his favor on discovery matters when he has advanced meritorious claims. See e.g., Snyder v. Bender, No. 09-1396, 2011 WL 1135539 (M.D. Pa. March 25, 2011); Snyder v. Bender, No. 09-1396, 2011 WL 1357517 (M.D. Pa. April 11, 2011).

As for the Plaintiffs' suggestion that recusal is warranted here because of some alleged *ex parte* communications between defense counsel and the Court, this claim is factually bankrupt, and was acknowledged as bankrupt by Plaintiffs' counsel three months ago. Thus, we cannot allow the Plaintiffs to seek our recusal on the basis of an assertion which is false and which they have acknowledged that they know to be false. Indeed, there is an extraordinary irony to this assertion, since the only party that has requested, and had, any *ex parte* communication with the Court, albeit solely on scheduling matters, has been the Plaintiffs' counsel. In fact, Plaintiffs' counsel

---

[3]Indeed, in this respect Plaintiffs counsel's argument in this motion calls to mind Joseph Heller's classic novel, Catch-22, since the rationale of Plaintiffs counsel–like the reasoning of the characters in Catch-22– seems to suggest that the very fact of denying a recusal motion compels the Court to grant a recusal motion.

would do well to recall that it was the Court's voluntary disclosure of this brief *ex parte* communication that led Plaintiffs' counsel to opine that: "You haven't done anything improper. I've been impressed with you, not only your affability, but your fairness. So judge, I'm not complaining at all. I will swear." (Doc. 106, p. 4.)

It is well-settled that a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002) (quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see also United States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998). In this case, the grounds for recusal belatedly cited by Plaintiffs' counsel are either legally insufficient or factually bankrupt. Moreover, and more troubling, the invalidity of some of the factual assertions made by counsel in these pleadings is something that has been known and acknowledged by counsel for months. Furthermore, these belated assertions are actually contradicted by the statements of Plaintiffs' counsel, who previously attested to the Court's fairness. Therefore, on these facts our duty is clear. We will continue to sit in this case.

### III. <u>Conclusion</u>

Accordingly, for the foregoing reasons, the Plaintiffs' motion to recuse (Doc. 119), is DENIED. So ordered this 19th day of May, 2011.

*<u>S/Martin C. Carlson</u>*
Martin C. Carlson
United States Magistrate Judge
