## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES BRESLIN, et al.,** | : | **Civil No. 1:09-CV-1396** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **(Judge Stengel)** |
| | : | |
| **DICKINSON TOWNSHIP, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

This case, which comes before the Court for resolution of a discovery dispute, presents a striking proposition: The plaintiffs, who have ignored multiple prior discovery motion deadlines, have now filed a motion to compel which, in large measure, urges this Court to order the defendants to respond to discovery demands which the plaintiffs were not authorized in the first instance to propound upon the defendants. Thus, the plaintiffs, who have not obeyed court orders setting discovery limitations in this case, now invite the Court to reward this failure to comply with court orders by directing the defendants to respond to discovery demands which far exceed the number of discovery demands authorized by the Court.

This we cannot do. For the reasons set forth below, the plaintiff's to compel will be denied.

II.     **Statement of Facts and of the Case**

A.     **Initial Discovery Proceedings**

This case is a civil rights action brought by the plaintiffs against defendants, various local township officials, alleging constitutional First Amendment and First Amendment-retaliation claims. In their complaint, the plaintiffs seek wide-ranging relief from the defendants, including attorneys fees and damages. (Docs. 1 and 36.) Following protracted, acrimonious and contentious discovery proceedings, this case was referred to the undersigned on January 25, 2011, for the purpose of overseeing pre-trial discovery. (Doc. 77.) By the time of this case referral, a number of discovery decisions and rulings had been made in this case, rulings that defined the law of the case.

The tortured path of this discovery began in December of 2009 when the plaintiffs propounded their first requests for production of documents, which included some 24 document production requests. (Doc. 164, 165.) These initial document production requests were flawed documents, which failed to even properly identify the parties to this litigation, asserting erroneously that this was a lawsuit against the City of York. (Id.)

At the time that this discovery was propounded by the plaintiffs, there were pending before the Court  motions to dismiss this complaint. (Docs.  12, 24, 39, 41.)

Because the Court's rulings on these motions could well define the scope and nature of discovery permissible in this action, the district court, Kane, C.J., prudently stayed discovery pending resolution of these motions. (Doc. 52.)

### B.    The District Court Sets Discovery Limits in This Case

On August 19, 2010, the district court entered an opinion and order which denied all of the plaintiffs' claims with the exception of three First Amendment claims. (Doc. 69.)  Despite the fact that the issues and claims that remained in this lawsuit had changed and narrowed significantly as a result of the district court's August 19, 2010 opinion, the plaintiffs' request for production remained unchanged. Thus, in September of 2010, the plaintiffs tendered an additional set of requests for production of documents to the defendants following the entry of this order dismissing numerous claims, which propounded 24 requests for production that were substantively identical to the plaintiffs' original requests for production of documents. Therefore, the plaintiffs neglected to tailor their discovery requests to reflect the changing legal realities in this litigation following the district court's opinion which dismissed many of the plaintiffs' claims.

Following the entry of this order, which substantially narrowed the plaintiffs' claims and the issues in this lawsuit, on October 28, 2010, the district court, C.J. Kane, entered a case management order designed to set orderly discovery procedures

3

governing this litigation. (Doc. 73.)  In part, this case management order limited the plaintiffs to the submission of 25 requests for production of documents. (Id.) This order also advised the parties in clear and precise terms that: " *Discovery in excess of these limits must be approved by the Court*." (Id.)(emphasis added.)

By December 2010, the defendants responded to the plaintiffs' September 2010 requests for production of documents.  In these responses the defendants  provided some information, disclosed that some information did not exist in their possession, and leveled objections to numerous requests propounded by the plaintiffs, objecting either on the grounds that these requests for production sought information protected by attorney-client privilege, or that these requests for production sought information which pertained to claims which had been dismissed by the district court. ( Doc. 165.)

On December 14, 2010, the plaintiffs then submitted another request for production of documents, which made one additional request upon the defendants for copies of a videotape of a December 6, 2010, Board of Supervisors meeting. The defendants ultimately produced this videotape, fully satisfying this particular request for production of  documents. With the submission of this request, the plaintiffs had now propounded 25 requests for production of documents upon the defendants, the full complement of requests for production authorized by the district court in October 2010.

### C.   The Plaintiffs Failed to Abide By the Discovery Limits Set in the Case Management Order

Having by December 2010 propounded the full set of 25 requests for production of documents authorized by the district court, the plaintiffs' counsel then chose to ignore these case management deadlines, randomly propounding a total of 89 additional requests for production of documents–all of which exceeded these case management limits–over the next three months. Thus, on February 24, 2011, plaintiffs' counsel propounded an additional request for production of documents seeking a single category of material. (Id.) On March 9, 2011, the plaintiffs tendered another request for production of documents, which made an additional, singular request for information. (Id.) Finally, on March 28, 2011, the plaintiffs' propounded what they described as their sixth request for production of documents on the defendants. (Id.)

This sixth request for production constituted a wholesale repudiation of the court-ordered case management limitations on discovery previously set by the court and consisted of 87 requests for production, all of which exceeded the case management limits set by the district court in writing in October 2010.Thus, by April 2011, the plaintiffs had completely ignored these case management deadlines and propounded a total of 114 requests for production of documents upon the defendants.

Moreover, at the same time that the plaintiffs were ignoring these discovery limitations, they were also failing to abide by discovery schedules set by the Court.

### D.    The Plaintiffs Fail to Abide By Multiple Discovery Deadlines

In fact, despite the district court's clear injunction that: "*Discovery in excess of these limits must be approved by the Court*," (Doc. 73)(emphasis added), the plaintiffs took no steps to authorize the submission of additional requests for production of documents. Instead, the plaintiffs unilaterally chose to ignore these case management deadlines, and launched on an eccentric pattern of behavior marked in equal measures by angry exchanges with counsel, repeated failures to comply with scheduling orders, and the submission of multiple, unauthorized discovery demands upon the defendants. This pattern of behavior began on February 7, 2011, when this Court met with counsel to discuss outstanding discovery issues. At that time, the Court instructed plaintiffs' counsel to file a proper, and properly supported, motion to compel, and was assured by counsel that he would file such a motion. (Doc. 83, pp.3-4.) The Court then underscored this deadline in writing, instructing plaintiffs' counsel that: "Plaintiff shall be permitted to file a motion to compel Defendants to respond to outstanding document requests, together with a supporting brief, not later than **Tuesday, February 22, 2011**." (Doc. 82.) Plaintiffs' counsel never complied with this deadline by filing the motion to compel which he urged the Court to

schedule, thus beginning an odd pattern of behavior in which plaintiffs' counsel insisted upon action on discovery issues, and then failed to act when the Court set deadlines for action, the very deadlines which the plaintiffs' counsel sought.

This pattern repeated itself one month later, on March 17, 2011, when the parties each separately requested that the Court schedule a discovery conference to address these on-going discovery disputes. (Docs. 94 and 95.) The Court promptly responded to these concerns, scheduling and conducting a discovery conference with all counsel on March 24, 2011. (Doc. 96.)[1] At the close of this conference, the Court entered an order setting a discovery litigation schedule in this case. This schedule was largely animated by concerns voiced by the plaintiffs' counsel regarding delays in this litigation, and set a 30-day schedule for resolving pending discovery disputes, providing in clear and precise terms as follows:

> 1. [T]he parties shall exchange written communications on or before **March 28, 2011**, identifying specifically what documentary discovery each party is still seeking from the opposing party. Between **March 28 and April 11, 2011,** the parties shall jointly address, and resolve, all of these pending documentary discovery issues that are capable of resolution without rulings by the court.

---

[1]This conference also illustrated another phenomenon in this litigation that has impeded efforts to move forward in this case. Plaintiffs' counsel occasionally seizes upon tangential matters of no particular relevance to the broader issues in the case, and pursues these tangents to the exclusion of those broader issues. For example, during this March 24 conference, plaintiffs' counsel devoted great time, attention and industry to a lengthy discussion of counsel's concerns regarding a postage label on a box. (Doc.106 , pp.7-13.)

2. The parties shall **jointly** advise the Court, in writing, of any remaining disputes regarding the production of documents in this case not later than **Monday, April 11, 2011**.

3. To the extent that any such disputes regarding document production remain after April 11, 2011, the parties may file motions seeking judicial resolution of these disputes not later than **Friday, April 15, 2011**.

4. The parties may respond to any motion filed regarding document production not later than **Friday, April 22, 2011**.

5. The parties shall meet and confer to determine the depositions that will be taken in this action, and to schedule such depositions so that the depositions may be taken on and after **Monday, May 16, 2011**, unless capable of being taken earlier. The parties are directed to schedule these depositions collaboratively in consultation with one another, and are not to unilaterally schedule these depositions. The parties are further instructed to report to the court on the completion of this deposition scheduling on or before **April 22, 2011.**

(Doc. 97.)

Despite having actively sought the Court's intervention in these discovery matters, (Doc. 95), the plaintiffs' counsel largely neglected the deadlines which he had asked the Court to impose in order to facilitate discovery. Thus, plaintiffs' counsel ignored the April 15, 2011, deadline set by the Court for the filing of discovery motions. When the defendants filed a timely motion to compel discovery, (Doc. 103), the plaintiffs' counsel then chose not to respond to that motion to compel by April 22, 2011, as previously directed by the Court. The plaintiffs' counsel then failed to comply with the Court's order, which also directed the parties to confer and

report to the Court regarding the scheduling of depositions by April 22, 2011, a matter that previously had been an issue of urgency for the plaintiffs' counsel.

On June 17, 2011, the Court met again with counsel in yet another effort to secure progress in the course of discovery in this matter. (Docs. 155, 156.) Following this conference we provided plaintiffs' counsel with one last opportunity to litigate these issues, and set a schedule for resolving any last remaining outstanding issues pertaining to document discovery which the plaintiffs had previously repeatedly neglected to present to the Court in an intelligible fashion. Under the terms of this order, the plaintiffs were given one final opportunity to file a motion to compel in this matter by July 1, 2011.

### E.    The Plaintiffs' Current Motion to Compel

The plaintiffs' counsel complied with this third filing deadline by filing a motion to compel on July 1, 2011. (Docs. 159-161.) This long-awaited and oft-promised pleading was a curious document. At the outset, on its face this motion advertised the plaintiffs' failure to comply with the court-ordered discovery limits set forth in the October 2010 case management order. That order limited the plaintiffs to 25 requests for production of documents, and instructed the plaintiff that: "*Discovery in excess of these limits must be approved by the Court*." (Doc. 73.)(emphasis added.) Despite this explicit guidance, the plaintiffs' motion to compel sought to compel the

production of 49 categories of information, twice the number of requests for production authorized by the district court.(Doc. 159.)

Beyond highlighting the plaintiffs' failure to abide by the case management order, this motion added very little to the discussion of these discovery issues that was either persuasive or intelligible. At the outset, the motion suggested erroneously that there had been a wholesale failure by the defendants to comply with these requests. This assertion does not appear to be correct. Quite the contrary, the defendants have promptly responded to these requests for production, complying with some requests, informing the plaintiffs that they do not possess records responsive to other requests, and objecting to many requests. (Doc. 164, 165.) Thus, the problem here has not been a wholesale lack of responsiveness by the defendants. Rather, the difficulty here lies in a combination of factors: The defendants' objections to certain categories of discovery, coupled with the persistent inability of the plaintiffs' counsel to frame these discovery issues in a timely and comprehensible fashion.

That inability has persisted in the current motion to compel. A motion to compel should meet two simple requisites:  First, it should provide the Court a coherent factual narrative which enables us to understand the factual dispute between the parties.  Second, it should provide a concise legal analysis explaining why as a matter of law a party is entitled to the discovery that  party seeks.

The current motion to compel satisfies neither of these basic requisites. First, the factual narrative accompanying this motion is confused, confusing and occasionally defies ready understanding.  For example, in their brief in support of this motion to compel, the plaintiffs counsel's factual narrative is littered with expressions such as "[a]nd so on and so on" or "etc., etc., etc." (Doc. 161, p. 2), expressions which add nothing to our understanding of this dispute.   The plaintiffs then provide no coherent explanation for their unexcused failure to comply with the case management order; neglect to address the defendants' argument that they seek discovery on claims that have been dismissed by the Court; and completely fail to address the defendants' attorney-client privilege claims.  The plaintiffs also neglect to address the most basic requirement of a motion to compel.  They fail to articulate the factual relevance of this requested information beyond merely asserting that: "[s]uch information is highly relevant." (Doc. 161, p. 4.)  Furthermore, the plaintiffs' brief in support of this motion to compel is remarkable in one respect: It cites absolutely no legal authority whatsoever to support the plaintiffs' claims.

The defendants have filed responses opposing this motion to compel, (Docs. 164 and 165 ), and the plaintiffs have now allowed the time for filing a reply brief to lapse without further action.  Therefore, this matter is now ripe for resolution.

Since the plaintiffs cite no legal authority in support of their motion to compel, and the motion invites the Court to reward the plaintiffs for ignoring the case management deadlines set in this case, the motion to compel will be denied.

## II.    __Discussion__

Several basic guiding principles inform our resolution of the instant discovery dispute.   At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides that:

> (a) Motion for an Order Compelling Disclosure or Discovery
>
> (1) In General. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> (1) Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.   Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead

12

to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Fed. R. Civ. P. 26(b)(1)

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court.  Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion.  Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States,

943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." <u>Kresefky v. Panasonic Commc'ns and Sys. Co.</u>, 169 F.R.D. 54, 64 (D.N.J.1996); <u>see also Hasbrouck v. BankAmerica Hous. Servs.</u>, 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

In addition, there is another essential facet to the court's discretion in this field. It is beyond dispute that the district court has the authority and the discretion to impose limitations and restrictions on the nature, scope, extent and type of discovery

which it will permit the parties to propound. <u>See</u> F.R.Civ. Pro., Rule 26(c). This wide-ranging authority and discretion extends to requests for production of documents, and permits the court to set reasonable limits on this particular form of discovery, prescribing the number and type of requests that a party may propound. <u>See  Nestle Food Corporation v. Aetna Casualty and Surety Co.</u>, 135 F.R.D. 101 (D.N.J. 1990).

A necessary corollary of these principles is that parties may only obtain discovery regarding issues properly presented and pending in a lawsuit. "Thus, it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken." <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 352 (1978). Therefore, rulings granting dispositive motions also define, and narrow, the scope of permissible discovery.

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. <u>Morrison v. Philadelphia Housing Auth.</u>, 203 F.R.D. 195, 196 (E.D.Pa. 2001). That party would also bear the burden of demonstrating its compliance with case management limitations set by the court. Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), . . . , (2) is of such marginal relevance that the potential harm occasioned by discovery would

outweigh the ordinary presumption in favor of broad disclosure, [or seeks privileged information]." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

Here, judged against these standards, the plaintiffs' motion to compel fails for a host of reasons. First, this motion to compel ignores the plaintiffs' own failure to abide by court-ordered discovery limitations. These limitations were set by the Court in October 2010, restricted the plaintiff to 25 requests for production of documents, and plainly stated that: "Discovery in excess of these limits must be approved by the Court." (Doc. 73.) In the face of this clear instruction, the plaintiffs propounded 114 requests for production, and now seek an order directing the defendants to comply with 49 requests for production of documents, a number of requests which is nearly twice that authorized by the court. Further, a review of these 49 requests reveals that many of the requests appear to be the same requests that were made by the plaintiffs in March of 2011 after they had exceeded the discovery limitations set by this Court. Thus, plaintiffs' motion invites the Court to ignore the plaintiffs' failure to comply with the case management order. Indeed, the motion does more than invite us to ignore this failure; it actually urges us to reward this conduct by compelling answers to requests that the plaintiffs were not authorized to propound. We will not reward the practice of disregarding court orders.

Beyond this threshold fundamental flaw, we note that the plaintiffs have provided no articulable basis for assessing the relevance of these multiple document

production requests.  In fact, the plaintiffs' showing of relevance is wholly wanting, and merely combines a conclusory statement that "[s]uch information is highly relevant," (Doc. 161, p. 4), with a largely abstruse factual narrative punctuated by expressions such as "[a]nd so on and so on" or "etc., etc., etc." (Doc. 161, p. 2), terms which add nothing to our understanding the plaintiffs' claims of relevance.

In addition, the plaintiffs' motion does not refute, address or analyze any of the defendants' objections to these requests for production of documents.  These objections are premised on claims which are soundly based in fact and law, including claims that the plaintiffs have exceeded case management limitations on discovery and seek to production of privileged information.  The plaintiffs' complete failure to address, or even acknowledge, these well-founded objections is fatal to their efforts to compel production of this material.

Furthermore, our own independent assessment of these requests reveals that many of them are subject to objection on multiple grounds.  For example, many of the requests seem to call for production of information relating to events which occurred after this litigation commenced.[2]   The plaintiffs provide no explanation of the relevance of these events–which took place after this litigation commenced–to the discrete surviving issues in this lawsuit.

_____

[2]See for example, requests for production number 2, 3, 12, 13, 15, 27, 32, 33, 34, and 41. (Doc. 160.)

Similarly, these requests for production seem to make a series of demands for documents regarding matters that appear on the face of the plaintiffs' requests to be cloaked in attorney-client privilege.  For example, at times the plaintiffs make what appear to be wholesale demands for disclosure of clearly privileged matters, communications between attorneys and clients.[3]

Moreover, a number of these requests for production are plainly overboard, and unduly burdensome in that they demand the production of records reaching back a decade or more, well beyond the specific events which constitute the acts giving rise to the plaintiffs' First Amendment claims.[4]

Finally, many of these requests appear to request documents pertaining to matters far afield from the plaintiffs' First Amendment claims.  Thus, for example, the plaintiffs request without any proffer of relevance:  banking data, loan agreements, audit reports, and a 2006 contractual agreement with someone  named "Augie Ginter."[5]  The plaintiffs' insistence on the disclosure of these far-reaching and wide-ranging matters in a case which presently involves a specific First Amendment claim

---

[3]See, for example, requests for production number 1, 2, 3, 5, 16, 22, and 23. (Doc. 160.)

[4]See, for example, requests for production number 12, 13, 14, 15, 20, 21 and 25. (Doc. 160.)

[5]See, for example, requests for production number 1, 6, 8, 12, 13, 14, 15, 16, 17, 18, 20, 21, 22, 23, 24, 25, 35, 36, 40.

appears to erroneously equate the plaintiffs' curiosity regarding these unrelated matters with the legal concept of relevance.   In the absence of some articulated explanation concerning how these items of curiosity become relevant to the remaining issues in this lawsuit–an explanation which has not been provided by the plaintiffs despite repeated requests by the Court over the past six months to file a properly documented motion to compel–we are constrained to deny this motion to compel.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the plaintiffs' motion to compel, (Doc. 159) is DENIED.[6]

<u>*S/Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

---

[6]We note that the defendants also seek to recover costs and attorneys' fees in their response for what they regard as needless litigation in the face of a frivolous discovery motion filed by the plaintiffs.  This is one of multiple, competing requests of this type that have emerged in this acrimonious litigation.  The court will address all of these various competing requests for costs and fees at one time in a subsequent opinion and order once the merits of these discovery disputes are fully adjudicated.