IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES BRESLIN, et al., | : | Civil No. 1:09-CV-1396 |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | (Judge Stengel) |
| | : | |
| DICKINSON TOWNSHIP, et al., | : | (Magistrate Judge Carlson) |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION AND ORDER

### I.   Introduction

This case, which comes before us for consideration of Plaintiffs' motion that this Court recuse itself in this case, inspires "a profound sense a tragedy", Lease v. Fishel, 712 F.Supp.2d 359,386 (M.D.Pa. 2010), compels us, once again, to consider the unfortunate professional trajectory of plaintiffs' counsel, and requires us to reflect upon the recurring, and wholly regrettable, themes that now mark his practice in this and other litigation before this Court.

At the outset, this motion reveals the apparent inability of counsel to take to heart the Court's prior admonition to consider, "the wisdom of Albert Einstein, who once stated that doing the same thing over and over again and expecting different results is the highest form of folly." Breslin v. Dickinson Tp., No. 09-1396,  2011

WL 1900448, *6 (M.D.Pa. May 19, 2011). Here, counsel pursues Einstein's folly by filing a motion which is essentially identical to several pleadings that were previously considered–and rejected–by this Court in this, and other cases. Indeed, in this motion counsel repeats an argument which counsel himself conceded one year ago had no basis in fact. Moreover, this case also illustrates a particularly tragic and inappropriate course which this counsel has chosen to follow, a course in which counsel responds to judicial rulings by leveling groundless accusations against various judges, Beam v. Bauer, 151 F. App'x 142, 144 (3d Cir. 2005)(holding that "Counsel's tirade against [district judge] is unfounded and unprofessional....") , or by filing what were determined to be utterly baseless recusal motions against the presiding judge in a proceeding. Conklin v. Warrington Township, 476 F.Supp.2d 458 (M.D. Pa. 2007).

Remarkably, with the passage of time this penchant has become even more pronounced, notwithstanding the fact that courts have, time and again, roundly criticized and flatly rejected this particular and corrosive conduct by plaintiffs' counsel.[1] Thus, over time counsel's accusations have become more frequent, frantic,

---

[1] For an illustrative example of the types of misconduct which have resulted in sanctions and admonitions against this counsel, see, e.g., Beyer v. Duncannon, 428 F. App'x 149, 155 n.7(3d Cir. 2011); Lewis v. Smith, No. 08-3800, (3d Cir. Aug. 19, 2010)(petition for rehearing filed by plaintiff's counsel in which counsel makes claims of wide-ranging misconduct by federal trial and appellate judges

far-reaching and far-fetched.  For example, counsel has routinely filed what the courts

have repeatedly found to be baseless recusal motions.[2]   Moreover, with each

recounting, counsel's claims against the judiciary become more far-reaching, all

encompassing, and increasingly have "the qualities of something imagined, but not

real." Lease v. Fishel, 712 F.Supp.2d 359, 377 (M.D.Pa. 2010).   Presently, these

---

throughout Pennsylvania, and then suggests that some judges may have also
attempted to curtail his own inquiries into the existence of various "cults" that
allegedly engage in "perverse . . .  activities"); Beam v. Downey, 151 F.App'x 142
(3d Cir. 2005); Beam, v. Bauer, 383 F.3d 106 (3d Cir. 2004); Beam v. Bauer, 88
F.App'x 523 (3d. Cir. 2004); Lewis v. Smith, No. 07-2011, 2010 WL 3081938
(M.D. Pa. Aug. 6, 2010); Lease v. Fishel, No. 07-03, 2009 WL 922486 (M.D.Pa.
April 3, 2009); Venesevich v. Leonard, No. 07-2118, 2009 WL 36437 (M.D.Pa.
Jan. 6, 2009); Venesevich v. Leonard, No. 07-2118, 2008 WL 5340162 (M.D.Pa.
Dec. 19, 2008); Conklin v. Warrington Township, No. 05-1707, 2006 WL
2246415 (M.D. Pa. Aug. 4, 2006), aff'd.., 304 F. App'x 115 (3d. Cir. 2008);
Cornish v. Goshen, No. 04-232, 2005 WL 5394660 (M.D.Pa. Aug. 1, 2005);
Mitchell v. Guzick, No. 3:02-CV-0178, slip op. at 2 n. 1 (M.D.Pa. July 26, 2004);
Barshinger v. Buffington, No. 1:03-CV-0506, slip op. at 2 n. 1 (M.D. Pa. June 10,
2004), aff'd, No. 04-2908 (3d Cir. Apr. 28, 2005); Boyer v. Barry, No. 1:03-CV-
1368, slip op. at 1 n. 1 (M.D.Pa. Feb. 24, 2004); Beam v. Bauer, No. 1:02-CV-
1797, slip op. at 3 (M.D.Pa. Mar. 25, 2003); Hicks v. Arthur, 891 F.Supp. 213
(E.D. Pa. 1995), aff'd., 91 F.3d 123 (3d. Cir. 1996).

   [2]See, e.g., Morris v. Kesselring, No. 09-1739, 2012 WL 278727 (M.D. Pa.
Jan. 31, 2012); Dock v. Rush, No. 09-606, 2012 WL 86893 (M.D. Pa. Jan. 11,
2012); Phillis v. Harrisburg School Dist., No. 07-1728, 2011 WL 6294486 (M.D.
Pa. Dec. 15, 2011);  Thomas v. Sandstrom, No. 09-1557, 2011 WL 6050348 (M.D.
Pa. Dec. 6, 2011); Breslin v. Dickinson Twp., No. 09-1396, 2011 WL 1900465
(M.D. Pa. May 19, 2011); Conklin v. Anthou, No. 10-2501, 2011 WL 1303299
(M.D. Pa. April 5, 2011); Lease v. Fishel, 712 F.Supp.2d 359, 386 (M.D.Pa.2010);
Conklin v. Warrington Township, 476 F.Supp.2d 458 (M.D. Pa. 2007).

claims of judicial bias are sweeping, and embrace state and federal trial courts, the

Pennsylvania Supreme Court, The Disciplinary Board of the Supreme Court of

Pennsylvania, and the United States Court of Appeals for the Third Circuit. See e.g.,

Beyer v. Duncannon, 428 F. App'x 149, 155 n.7(3d Cir. 2011); Bailey v. Disciplinary

Board of the Supreme Court of Pennsylvania, No. 11-1130, 2011 WL 4102811 (W.D.

Pa. Sept. 14, 2011).

It is against this backdrop that we consider the current motion to recuse.

## II.   Statement of Facts and of the Case

Some brief factual context is helpful in understanding the current motion to

recuse.  This case is a civil rights action brought by the plaintiffs against defendants,

various local township officials, alleging constitutional First Amendment and First

Amendment-retaliation claims.  Following contentious discovery proceedings, this

case was referred to the undersigned on January 25, 2011, for the purpose of

overseeing pre-trial discovery. (Doc. 77)  We also were concurrently assigned

responsibility for a second case being litigated by plaintiff's counsel, Snyder v.

Bender, No. 1:09-CV-927, on February 14, 2011. Snyder v. Bender, No. 1:09-CV-

927 (Doc. 67.)[3]

---

[3]Counsel's approach to these two cases illustrate the oddly erratic nature of
the plaintiffs' counsel's practice.  Plaintiffs' counsel bases the current recusal
motion, in large measure, on what he perceives to be a far-reaching, decades-old,

In the instant case, upon being assigned to this matter, we promptly scheduled a telephone conference in this case with all counsel on February 5, 2011. (Doc. 83) At this conference, the Court had a full opportunity to address a host of discovery issues for the parties, and spoke to a concern voiced by plaintiffs' counsel, who expressed a fear that in an earlier meeting of counsel, defense counsel may have had an *ex parte* telephone contact with the Court. (Id., pp. 18-26.)  In response to this concern voiced by plaintiffs' counsel, both the Court and defense counsel stated that no *ex parte* communication had occurred.  Rather, defense counsel simply spoke to the Court's deputy clerk, who advised counsel that the parties should address any disputes at their meeting among themselves. (Id.)

On February 5, 2011, plaintiffs' counsel expressed complete and total satisfaction with the information provided by the Court on this score, stating: "I very much appreciate your bringing it up", (id., p.18), and affirming counsel's view of the Court's fairness in this regard, asserting:  "I appreciate your response.  I can't tell you how happy it makes me, because you know what, I didn't think you'd do that." (Id., p.20.)  Plaintiffs' counsel then went on to make two observations, stating to the Court

---

seamless linear cabal involving the Court and countless others.  Curiously, however, counsel has never identified the alleged cabal as recusal grounds in Snyder v. Bender, No. 1:09-CV-927 although this particular ground of  recusal would have been identical in both of these cases.

that he was " [v]ery grateful with your candor", (<u>id.</u>, p. 20), while suggesting that he might wish to send the Court an *ex parte* letter. (<u>Id.</u>,"Maybe just a letter form to you? Do you want me to copy it to the other counsel?")

We declined this invitation by plaintiffs' counsel to indulge in some form of *ex parte* communication and instead advised all counsel as follows regarding the rules for communication with the Court:

> THE COURT: Anything -- just as you appropriately asked that any communications from the other side be transparent, if you are going to send me a further letter on this issue, you should make sure the other side receives a copy of it. Is that fair?
>
> MR. BAILEY: Yes, sir. Yes, sir, I will do that.
>
> THE COURT: Is that fair from the point of view of the Defendants?
>
> MR. MORGANSTERN: That is fair, Your Honor.

(<u>Id.</u>, 20-21.)

Following our initial assignment to these cases, and for several months after these case assignments, plaintiff's counsel expressed complete satisfaction with the court. Thus, on March 4, 2011, in the companion case, plaintiffs' counsel informed this Court that: "I love my fellow man, believe it or not. You probably wouldn't even believe that *I love you*." <u>Snyder v. Bender</u>, No. 1:09-CV-927 (Doc. 75, p.5, emphasis added.)

Similarly, on March 24, 2011, in a conference held in this case, plaintiffs'

counsel volunteered to swear to the Court's integrity, fairness and affability, stating:

> You haven't done anything improper. I've been impressed with you, not
> only your affability, but your fairness. So judge, I'm not complaining at
> all. I will swear.[4]

(Doc. 106, p. 4)

Plaintiffs' counsel repeated these observations later during this March 24, 2011

conference, informing the Court that: "I noticed when I called here the other day how

affable you were. I was very impressed." (Doc. 106, p.34)

Forty-three days later, on May 6, 2011, plaintiffs' counsel moved to recuse this

Court, alleging that the Court was unfair and biased. (Docs. 119 and 120)  The only

intervening events which had occurred in the span of these 43 days to transform the

Court in the eyes of plaintiffs' counsel from loveable, affable and fair to biased and

subject to recusal were that:  First, at the urging of plaintiffs' counsel, we set an

expedited schedule for the resolution of discovery issues in this case; second,

plaintiffs' counsel inexplicably failed to comply with the schedule that the plaintiffs

---

[4]Ironically, in the current recusal motion the plaintiffs actually imply that
their own counsel was being dishonest when he made these statements to the
Court, characterizing his remarks as "obsequious comments." (Doc. 261-1, p.2)
We reject the plaintiffs' efforts to disparage the honesty of their own counsel on
this score.  Indeed, any claim that counsel is "obsequious"in his dealings with the
Court  simply lacks credibility.  Therefore, we reject this particular effort by
plaintiffs to impeach their own counsel.

asked us to set, and failed to respond to a defense motion to compel; and third, we then did what a court is supposed to do:  We ruled upon this uncontested motion to compel.[5]

We denied the plaintiffs' motion to recuse in an opinion and order entered on May 19, 2011. See Breslin v. Dickinson Twp., No. 09-1396, 2011 WL 1900465 (M.D. Pa. May 19, 2011).  Following the denial of this recusal motion, the Court then presided over numerous matters in this case, (Docs. 133-240), often ruling in favor of the plaintiffs when we regarded their position as meritorious. (Docs. 191-194)  At no time during the intervening eight months did the plaintiffs assert any judicial bias on the part of the Court which called for recusal.

On December 5, 2011, however, we filed a report and recommendation which recommended that the District Court deny a motion to belatedly supplement the complaint that was filed by the plaintiffs. (Doc. 241)  Plaintiff's counsel responded

---

[5]Sadly, these shortcomings were not an isolated incident, but were just the latest in a series of procedural defaults by counsel in this and other cases, who had repeatedly failed to comply with a series of litigation deadlines to the prejudice of his clients' interests. See e.g., Lease v. Fishel,  712 F.Supp.2d 359 (M.D.Pa. 2010)(failure to comply with sanctions motion response deadline); Snyder v. Bender, No. 09-927, 2010 WL 5110556 (M.D. Pa. Dec. 9, 2010)(failure to comply with briefing deadline);  Snyder v. Bender, No. 09-927, 2011 WL 1085692 (M.D. Pa. Mar. 21, 2011)(failure to timely file amended complaint).

to this report and recommendation in an erratic fashion, by first objecting to the report, (Doc. 249) and then moving to withdraw their objections. (Doc. 256)

Having decided that they would not object to the message set forth in this report and recommendation, the plaintiffs then, curiously, filed a motion on January 11, 2012, objecting to the messenger, this Court, and seeking to recuse the Court from this case. (Doc. 260)  A review of the motion reveals that it consists almost entirely of arguments that were previously considered, and rejected, by this Court in May 2011, including one claim which plaintiff's counsel acknowledged was factually bankrupt in February of 2011.

## II.   **Discussion**

### A.    **Recusal of This Court is Not Warranted**

Turning to this recusal motion, we note, sadly, that such motions and accusations are becoming an increasingly familiar refrain by the plaintiffs' counsel, whose response to past efforts by the courts to ensure appropriate professional conduct on his part has been to repeatedly file recusal motions against the presiding judges in these cases. See, e.g., Morris v. Kesselring, No. 09-1739, 2012 WL 278727 (M.D. Pa. Jan. 31, 2012); Dock v. Rush, No. 09-606, 2012 WL 86893 (M.D. Pa. Jan. 11, 2012); Phillis v. Harrisburg School Dist., No. 07-1728, 2011 WL 6294486 (M.D. Pa. Dec. 15, 2011);  Thomas v. Sandstrom, No. 09-1557, 2011 WL 6050348 (M.D.

Pa. Dec. 6, 2011); Breslin v. Dickinson Twp., No. 09-1396, 2011 WL 1900465 (M.D.

Pa. May 19, 2011); Conklin v. Anthou, No. 10-2501, 2011 WL 1303299 (M.D. Pa.

April 5, 2011); Lease v. Fishel, 712 F.Supp.2d 359, 386 (M.D.Pa.2010);   Conklin v.

Warrington Township, 476 F.Supp.2d 458 (M.D. Pa. 2007).   The substance of these

motions is also an increasingly familiar theme:  complaints that the Court is part of

a large, amorphous conspiracy.  See, e.g., Beam v. Bauer, 151 F. App'x 142, 144 (3d

Cir. 2005) (awarding attorneys' fees against attorney, who requested investigation of

trial judge, and alleged that the district court "set him up", holding that "Counsel's

tirade against [district judge] is unfounded and unprofessional....") [6]

The legal standards which govern such recusal requests are clear and are well-

known by plaintiff's counsel.  These principles begin with the settled tenet that a

judge "has as strong a duty to sit when there is no legitimate reason to recuse as he

does to recuse when the law and facts require." Bryce v. Episcopal Church in the

Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002) (quoting Nichols, 71 F.3d

at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see also United

---

[6] See also Lewis v. Smith, No. 08-3800, (3d Cir. Aug. 19, 2010)(petition for rehearing filed by plaintiff's counsel in which counsel makes claims of wide-ranging misconduct by federal trial and appellate judges throughout Pennsylvania, and then suggests that some judges may have also attempted to curtail his own inquiries into the existence of various "cults" that allegedly engage in "perverse . . . activities".)

States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University,

7 F.Supp.2d 359, 362 (S.D.N.Y.1998).

The guiding benchmarks in this field were aptly summarized in Conklin v.

Warrington Township, 476 F.Supp.2d 458 (M.D. Pa. 2007), a case which considered,

and rejected, one of counsel's prior recusal motions filed in the midst of other court

proceedings.  In terms that are equally applicable here, the court explained to counsel

that:

> The disqualification standard is set forth in 28 U.S.C. § 455, which provides
> in pertinent part as follows:
>
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify
> himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party....
>
> Id. Pursuant to the above quoted language, the court must consider whether its
> rulings and statements objectively produce the appearance of bias against
> Conklin. As explained by the Supreme Court, these provisions "require ... 'bias
> and prejudice' ... to be evaluated on an objective basis, so that what matters is
> not the reality of bias or prejudice but its appearance." Liteky v. United States,
> 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). This objective
> standard requires recusal when a "reasonable man knowing all the
> circumstances would harbor doubts concerning the judge's impartiality."
> Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.1987) (citing United States v.
> Dalfonso, 707 F.2d 757, 760 (3d Cir.1983)); see also In re Antar, 71 F.3d 97,
> 101 (3d Cir.1995). If the record presents a close question, the court must
> resolve the issue in favor of disqualification. Nichols v. Alley, 71 F.3d 347,
> 352 (10th Cir.1995).

Id. at 462-3.

It is clear, however, that a party's disappointment with what the party anticipates may be the court's rulings cannot form the basis for recusal.  As we have observed:

> The Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)). Subsections 455(a) and (b)(1) require the source of bias to be extrajudicial, that is stemming from a source outside of the proceeding, or of such an intensity as to make a fair trial impossible. Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253 (3d Cir.1995), cert. denied, 516 U.S. 915, 116 S.Ct. 303, 133 L.Ed.2d 208 (1995). As stated by the Supreme Court:
>
> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.
>
> Liteky, 510 U.S. at 555, 114 S.Ct. 1147 (emphasis in original).

Id. at 463.

Furthermore, in assessing recusal requests, courts must remain mindful that, in the hands of some unscrupulous advocates, a recusal motion may simply be a calculated tactical tool designed to avoid the result which the law dictates in a case. Thus, in every instance:

> [T]he court must consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings. In re Antar, 71 F.3d at 101; Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir.1993). Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002) (quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see also United States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998).

Id. at 463.

In order to ensure that recusal requests do not become last-minute devices used by expedient counsel to attempt to avoid outcomes mandated by law, a recusal motion is "also subject to the requirement that it be 'timely.' See 28 U.S.C. § 144. 'It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.' Apple v. Jewish Hosp. and Medical Ctr., 829 F.2d 326, 333 (2nd Cir.1987). The Third Circuit has described this requirement as one of 'reasonable diligence.' See Furst, 886 F.2d at 581 n. 30." Cooney v. Booth, 262 F.Supp.2d 494, 503-4 (E.D.Pa. 2003), aff'd., 108 F. App'x 739 (3d. Cir. 2004).

Moreover, where a recusal request, like this request, is premised upon some prior public service by a judge, such as service as United States Attorney, it is clear that the fact of that prior public service, standing alone,  does not provide grounds for recusal.  Indeed, such a global claim of recusal has long been expressly rejected by the United States Court of Appeals for the Third Circuit, which  has held that:

> Since a judge's prior position as a United States Attorney does not require his or her recusal unless the case at issue arose before the judge left that position, <u>see</u> <u>Barry v. United States</u>, 528 F.2d 1094 (7th Cir.), <u>cert. denied</u>, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); <u>In re Grand Jury Investigation</u>, 486 F.2d 1013, 1015-16 & n. 3 (3d Cir.1973), <u>cert. denied</u>, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974), [ a judge's] prior [government] position . . .  could not reasonably be deemed to be a basis to question [the judge's] ability to rule impartially in this case.

<u>Edelstein v. Wilentz</u> 812 F.2d 128, 131 (3d Cir. 1987).

In addition, it is clear that a party's use of invective toward the court cannot create recusal grounds since:

> There is a "well established judicial rejection of a rule that would permit a litigant or attorney to disqualify a judge by criticizing him." <u>United States v. Evans</u>, 262 F.Supp.2d 1292, 1296 (D.Utah 2003) (quoting <u>United States v. Helmsley</u>, 760 F.Supp. 338, 342-43 (S.D.N.Y.1991)). In other words, a litigant cannot unilaterally create the grounds for recusal. <u>See</u> <u>In re Mann</u>, 229 F.3d 657, 658-59 (7th Cir.2000) (filing of judicial misconduct charge in reaction to court's decision insufficient ground for disqualification). As [one court] has observed: "A party cannot cast sinister aspersions, fail to provide a factual basis for those aspersions, and then claim that the judge must disqualify herself because

the aspersions, *ex propio vigore,* create a cloud on her impartiality." In re United States, 158 F.3d at 35.

Conklin, 476 F.Supp.2d at 464.

There are also procedural standards which a party moving for recusal must meet. These standards are prescribed by 28 U.S.C. § 144, which as a procedural matter "mandates recusal '[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party.' Conklin, 476 F.Supp.2d at 463 n. 10. Thus, a proper, and timely filed, affidavit is a legal prerequisite to a recusal motion, a necessary step to impress upon all parties the gravity of the proceedings. When such an affidavit is timely filed: "it is the responsibility of the district judge against whom an affidavit is filed to assess the legal sufficiency of the affidavit. United States v. Townsend, 478 F.2d 1072, 1073 (3d Cir.1973) (stating that the mere filing of an affidavit 'does not automatically disqualify a judge')." Conklin, 476 F.Supp.2d at 463 n.10.

In addition, affidavits must meet certain evidentiary standards to justify recusal. An affidavit of recusal is legally sufficient only if the facts alleged therein: "(1) are material and stated with particularity; (2) would convince a reasonable person that a bias exists; and, (3) evince bias that is personal, as opposed to judicial in nature. United States v. Thompson, 483 F.2d 527, 528 (3d Cir.1973)." Conklin, 476

15

F.Supp.2d at 463 n. 10.   This is a burden which cannot be met through vague and conclusory accusations, or subjective assertions. Id. (citing Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990) (holding that, to be legally sufficient, an affidavit must contain more than mere conclusory allegations)); Cooney v. Booth, 262 F.Supp.2d 494, 502 (E.D.Pa.2003) (holding that opinions and conclusions based upon conjecture and speculation are legally insufficient to warrant recusal).

Judged against these legal standards, we must continue to decline the plaintiffs' request that we recuse ourselves from this case.   Indeed, this recusal motion fails for a host of fundamental reasons.

First, this motion ignores the fact that we have already twice thoroughly addressed, and rejected as meritless, virtually all of the plaintiff counsel's recusal claims, two years ago in another case,   Lease v. Fishel,  712 F.Supp.2d 359 (M.D.Pa. 2010), and then ten months ago in this litigation.   Breslin v. Dickinson Twp., No. 09-1396, 2011 WL 1900465 (M.D. Pa. May 19, 2011).   Under these circumstances, where we have previously and repeatedly addressed these matters with plaintiff's counsel, principles of *res judicata*, and law of the case apply and call for denial of this motion. See Heimbecker v. 555 Associates, No. 01-6140, 2003 WL 21652182

(E.D. Pa. March 26, 2003)(applying law of the case doctrine to deny second motion for recusal).[7]

Indeed, the only new claim that we can discern in this motion is a claim that is inscrutable, and speaks to another penchant of plaintiffs' counsel:  An ability to perceive sinister motives in commonplace events.  In this motion, plaintiffs' counsel devotes great energy to an extended exegesis regarding electronic case filing "e-mail drop down boxes," detailing what counsel apparently sees as some form illicit surveillance subtly reflected in the design of these "e-mail drop down boxes." (Docs. 261-2, 261-3) Plaintiffs' counsel acknowledges that the "e-mail drop down boxes," which trouble him typically involve cases with which this judge has had no involvement, stating that:  "[I]n neither of these case was Mr. Carlson involved. Regardless, all are Middle District cases." (Doc. 261-3, p.7 ¶20) Nonetheless, on the basis of these curious averments in unrelated litigation, counsel seeks our recusal.

This new allegation warrants only brief consideration.  Plaintiffs' counsel cites no legal authority for the novel position that the architecture of electronic case filing

---

[7]We commend counsel's careful attention to the *res judicata* and law of the case doctrines, since the failure to adhere to those doctrines and to persist in meritless claims in the face of prior rulings denying those claims can result in imposition of sanctions. <u>Lewis v. Smith</u>, No. 07-2011, 2010 WL 3081938 (M.D. Pa. Aug. 6, 2010).

"e-mail drop down boxes" in unrelated litigation compels the recusal of this Court in this case.  Moreover, while these allegations perhaps provides some insight into suspicions that may plague counsel's mind, they simply do not provide  grounds for recusal.  We have "as strong a duty to sit when there is no legitimate reason to recuse as . . . to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002).  Mindful of this duty, we will not withdraw from this lawsuit simply because counsel is disturbed by the design of electronic case filing "e-mail drop down boxes" in other, unrelated litigation.

As  for  counsel's  remaining  claims,  in  addition  to  being  barred  by considerations of *res judicata* and the law of the case, they fail on their merits.  For example, it is clear that our prior public service as United States Attorney does not provide grounds for recusal.  Indeed, this precise claim has long been rejected by the courts. Edelstein v. Wilentz 812 F.2d 128, 131 (3d. Cir. 1987).[8]

_____

[8]Indeed, we note an irony in this argument. The Plaintiffs' counsel decries our past public service as United States Attorney, implying that this public service in some way evidences an undefined form of judicial misconduct. Counsel also frequently cites federal criminal prosecutions of state judges in Luzerne County as evidence of judicial misconduct, but neglects to note that the undersigned pursued those Luzerne County judge prosecutions as United States Attorney. Counsel cannot have it both ways. He cannot suggest that this service as United States Attorney evidences a tolerance of judicial misconduct, while ignoring the fact that the misconduct which he alludes to was detected and prosecuted by that office when the undersigned served as United States Attorney.

As for plaintiffs counsel's efforts to cite this prior public service as emblematic of participation in some far-reaching, decades-spanning cabal, we have already addressed this concern and continue to find that:

> [M]erely reciting Mr. Bailey's recusal theory refutes it as a ground for recusal under an "objective standard [which] requires recusal when a 'reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality.' "Conklin, 476 F.Supp.2d at 463, *quoting,* Edelstein v. Wilentz, 812 F.2d 128, 131 (3d Cir.1987). In truth, Mr. Bailey's motion has the qualities of something imagined, but not real. The cabal he posits is incredible. If real, it would be a scheme which was global in its membership, yet completely clandestine in its activities. Indeed, this alleged scheme would have required thousands of participants, acting in concert for a quarter of a century, with the singular but secret goal of bedeviling Mr. Bailey. Moreover, although Mr. Bailey implies that this cabal is motivated by partisan political influences, the scheme he describes would have to be bi-partisan in nature, and would necessarily have been embraced with equal fervor by senior officials in both major political parties during at least four Presidential administrations . . . .

Lease v. Fishel, 712 F.Supp.2d 359, 376 -377 (M.D.Pa. 2010).[9]

---

[9]Furthermore, we continue to find that the fact that this judge participated 18 years ago in the federal prosecution of someone who was employed in the Office of Auditor General in the 1980's during Mr. Bailey's tenure as Auditor General of Pennsylvania, United States v. Henry, 29 F.3d 112 (3d. Cir. 1994), does not compel recusal of the court since it is well-settled that "a judge's prior position as a United States Attorney does not require his or her recusal unless the case at issue arose before the judge left that position, see Barry v. United States, 528 F.2d 1094 (7th Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); In re Grand Jury Investigation, 486 F.2d 1013, 1015-16 & n. 3 (3d Cir.1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974)."Edelstein v. Wilentz 812 F.2d 128, 131 (3d. Cir. 1987). Mr. Bailey was not a party in this 18-year old federal case. He did not represent any party in that case, and that case is totally

We further find that this recusal motion is procedurally flawed on multiple levels.  At the outset, we remain mindful of the fact recusal motions must "be 'timely.' See 28 U.S.C. § 144.  'It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.' Apple v. Jewish Hosp. and Medical Ctr., 829 F.2d 326, 333 (2nd Cir.1987), " Cooney v. Booth, 262 F.Supp.2d 494, 503-04 (E.D.Pa. 2003), aff'd., 108 F. App'x 739 (3d. Cir. 2004).  Here, we find that this motion to recuse–which is based upon discredited allegations reaching back to the 1980s–is both untimely and expedient.  Moreover, the affidavits attached to this motion, which couple vague and conclusory accusations with subjective impressions, are legally insufficient. Conklin, 476 F.Supp.2d at 463 n. 10 (citing Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990) (holding that, to be legally sufficient, an affidavit must contain more than mere conclusory allegations)); Cooney v. Booth, 262 F.Supp.2d 494, 502 (E.D.Pa.2003) (holding that opinions and conclusions based upon conjecture and speculation are legally insufficient to warrant recusal).  Furthermore, the matters set forth in these affidavits are contradicted by plaintiffs'

---

divorced both temporally and topically from the matter currently before this Court. Therefore, this unrelated, decades-old case in which Mr. Bailey was neither a party, nor counsel, cannot provide grounds for recusal.

counsel himself, who has previously volunteered to swear to the Court's integrity, fairness and affability, stating:

> You haven't done anything improper. I've been impressed with you, not only your affability, but your fairness. So judge, I'm not complaining at all. I will swear.

(Doc. 106, p. 4)

Nor can the plaintiffs' counsel justify recusal based upon the rulings made by this Court. Such a claim is plainly inadequate to justify recusal since it is absolutely clear that "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom, Inc., 224 F.3d 273, 278 (3d Cir.2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999) and Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir.1990)).

There is one other matter alluded by counsel in this motion which warrants brief mention. In this motion, plaintiffs' counsel resurrects a claim which was previously rejected by this Court in May of 2011, and a claim which counsel himself acknowledged had no legal or factual basis in February of 2011. Specifically, counsel implies that recusal is warranted here because of the possibility of some alleged *ex parte* communications between defense counsel and the Court.

This claim is factually bankrupt, and was acknowledged as bankrupt by plaintiffs' counsel in February of 2011, when Plaintiffs' counsel was informed that no

such communication had occurred and expressed complete and total satisfaction with the information provided by the Court on this score, stating: "I very much appreciate your bringing it up", (Doc. 83, p.18), and affirming counsel's view of the Court's fairness in this regard, asserting: "I appreciate your response. I can't tell you how happy it makes me, because you know what, I didn't think you'd do that." (Id., p.20.) Plaintiffs' counsel then went on to make two observations, stating to the Court that he was " [v]ery grateful with your candor", (id., p. 20), while suggesting that he might wish to send the Court an *ex parte* letter, (id.), a suggestion which we rebuffed. (Id.)

Further, we find ourselves constrained to underscore that throughout this case this Court has – as it does in all cases – endeavored to faithfully administer justice in a neutral, detached, dispassionate, and unbiased manner. Thus, this motion fails because it discounts a simple truth: The Court harbors no personal animus towards the plaintiffs' or their counsel, and does not favor any party in this litigation. Rather, the Court's rulings have reflected our neutrality and objectivity, along with our commitment to courtesy for all parties, a commitment to courtesy and fairness that has been expressly noted by plaintiff's counsel who has acknowledged that: " I've been impressed with you, not only your affability, but your fairness." (Doc. 106, p. 4)

We will continue to preside in this fashion, seeking to do that which is right as we are given the ability to see what is right. Therefore, these baseless allegations of

bias and misconduct, while routinely advanced by counsel, simply do not supply a

basis for this Court to abdicate its judicial role in these proceedings.[10] To the contrary,

we find that the appropriate response to this latest example of counsel's reckless and

misguided allegations against the Court is to resolve them on their merits, and

continue to discharge its judicial obligations to all parties in this action in a manner

that is fair to all.

Finally, given what the record in this case plainly reflects, we cannot allow the

plaintiffs' counsel to seek our recusal, for the second time, on the basis of an assertion

---

[10]Quite the contrary, we presently find ourselves, literally, in the company of dozens of other jurists and public officials all of whom have found themselves recklessly accused of a fantastic array of  misconduct by plaintiff's counsel simply because they have performed their duty under the law.  See .e.g.  Beyer v. Duncannon, 428 F. App'x 149, 155, n.7(3d Cir. 2011); Lewis v. Smith, No. 08-3800 (3d Cir. Aug. 19, 2010)(petition for rehearing filed by plaintiff's counsel in which counsel makes claims of wide-ranging misconduct by federal trial and appellate judges throughout Pennsylvania, and then suggests that some judges may have also attempted to curtail his own inquiries into the existence of various "cults" that allegedly engage in "perverse . . .  activities"); Morris v. Kesselring, No. 09-1739, 2012 WL 278727 (M.D. Pa. Jan. 31, 2012); Dock v. Rush, No. 09-606, 2012 WL 86893 (M.D. Pa. Jan. 11, 2012); Phillis v. Harrisburg School Dist., No. 07-1728, 2011 WL 6294486 (M.D. Pa. Dec. 15, 2011);  Thomas v. Sandstrom, No. 09-1557, 2011 WL 6050348 (M.D. Pa. Dec. 6, 2011); Bailey v. Disciplinary Board of the Supreme Court of Pennsylvania, No. 11-1130, 2011 WL 4102811 (W.D. Pa. Sept. 14, 2011); Breslin v. Dickinson Twp., No. 09-1396, 2011 WL 1900465 (M.D. Pa. May 19, 2011); Conklin v. Anthou, No. 10-2501, 2011 WL 1303299 (M.D. Pa. April 5, 2011); Lease v. Fishel, 712 F.Supp.2d 359, 386 (M.D.Pa.2010);   Conklin v. Warrington Township, 476 F.Supp.2d 458 (M.D. Pa. 2007).

which is false and which counsel has acknowledged for the past year that he knows

to be false.  Indeed, there is an extraordinary irony to this assertion, since the only

party that has requested, and had, any *ex parte* communication with the Court, albeit

solely on scheduling matters, has been the plaintiffs' counsel.  In fact, plaintiffs'

counsel would do well to recall that it was the Court's voluntary disclosure of this

brief *ex parte* communication by *plaintiffs' counsel* that led plaintiffs' counsel to opine

that:  "You haven't done anything improper. I've been impressed with you, not only

your affability, but your fairness. So judge, I'm not complaining at all. I will swear."

(Doc. 106, p. 4)

As we have noted, a judge "has as strong a duty to sit when there is no

legitimate reason to recuse as he does to recuse when the law and facts require." Bryce

v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002)

(quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508

(E.D.Pa.2003); see also United States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000);

Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998).  In this case,

the grounds for recusal belatedly cited by plaintiffs' counsel are either legally

insufficient or factually bankrupt.  Moreover, and more troubling, the invalidity of

some of the factual assertions made by counsel in these pleadings is something that

has been long known and acknowledged by counsel.  Furthermore, these belated

assertions are actually contradicted by the statements of plaintiffs' counsel, who previously attested to the Court's fairness. Therefore, on these facts our duty is clear. We will continue to sit in this case.

**B.    The Court will Deny the Various Competing Sanctions Demands By the Parties at this Time and Instruct All Parties to Raise Any Sanctions Claims at the Close of the Merits Litigation in This Matter.**

This recusal motion also reprises another on-going theme in this litigation since the parties have each demanded imposition of sanctions against opposing counsel in connection with this motion. This, too, is a recurring theme in this lawsuit, reflected not only in these pleadings, but also in prior pending motions for sanctions filed with this court. (Doc. 125)

With respect to these competing and repeated sanctions requests, it is well-settled that a district court has the inherent power to sanction parties appearing before it for refusing to comply with its orders and to control litigation before it. See, e.g., Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d Cir. 2007). Sanctions decisions rest in the sound discretion of the court and, if a district court awards sanctions pursuant to its inherent authority, such an award may only be reviewed for abuse of discretion, which will be found only where "the court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions,

278 F.3d 175, 181 (3d Cir. 2002) (quoting <u>In re Orthopedic Bone Screw Products</u> <u>Liability Litig.</u>, 193 F.3d 781, 795 (3d Cir. 1999)).

In our view, this discretion embraces both the decision whether to impose sanctions, and determinations regarding the proper timing of sanctions litigation. In this case we have previously observed that the parties' sanctions litigation has often caused the parties to lose sight of the principal issue in this case–the prompt and fair adjudication of the merits of their claims and defenses. This unfortunate practice also tends to conflate merits litigation with sanctions disputes. Despite the Court's suggestion that this process has been self-defeating, counsel continue to engage in this practice of raising sanctions claims in a *seriatim* fashion throughout this litigation.

Therefore, in the exercise of our discretion in this field, we have decided to adopt a scheduling approach to these sanctions issues that will compel counsels' attention to first principles– resolution of the merits of this dispute between the parties. As part of this approach we are denying all pending and competing sanctions requests at this time, without prejudice to renewal of these sanctions motions within 30 days following the conclusion of the merits litigation in this matter.

While we are deferring any proposed sanctions litigation in this matter, and directing the parties to focus their attention on the merits of the parties' claims and defenses, there is one final matter which we must address. In connection with this

recusal motion, the defendants have sought leave to file a surreply brief. (Doc. 268)

The defendants explain that they were compelled to seek leave of court for this

purpose "in order to address a significant misrepresentation by plaintiffs' counsel in

Plaintiffs' Reply Brief." (Doc. 268-1, p.1)  As the defendants explain:

> One of the issues that Plaintiffs and their counsel have raised in support
> of their baseless motion for recusal is the origin of an *ex parte* letter from
> Mr. Bailey to Judge Kane in which Mr. Bailey addressed perceived
> discovery concerns while Judge Kane was presiding over this matter. The
> Township Defendants obtained this letter after it was posted to ..
> www.pennsylvaniacivilrightslawnetwork.com ... a website administered
> by Andrew Ostrowski, a suspended attorney and Mr. Bailey's former law
> partner. (Facebook Page, attached hereto as Exhibit "C"). The letter can
> be found at page 330 of the document that was posted at:
> http://www.pennsylvaniacivilrightslawnetwork.comlmedia/Kings
> Bench_Don Bailey. pdf

> After the Township Defendants revealed the origin of this exhibit,
> Plaintiffs and their counsel engaged in dishonest and misleading conduct
> in order to cast doubt on the Township Defendants' claim. In their Reply
> Brief, Plaintiffs state:

>> One more example of abuse that will undoubtedly be
>> tolerated in this litigation. Defendants make a statement
>> regarding the so-called ex-parte correspondence that
>> Attorney Bailey sent to the Honorable Judge Yvette Kane
>> in the "so-called sealed investigation".Obviously, Attorney
>> Morgenstern's information, wherever he learned of it, is
>> inaccurate. A review of the web site that Attorney
>> Morgenstern mentions does not include the "Kane" letter.
>> The cite clearly does have the Petition for King's bench, but
>> minus exhibits.(Docket Item No. 266, at p. 15).

A review of Mr. Ostrowski's website shows that, since the filing of the Township Defendants' Brief in Opposition, Mr. Ostrowski had changed the link to the King's Bench Petition from:

http://www.pennsylvaniacivilrightslawnetwork.comlmedialKings Bench_Don _ Bailey.pd to:
http://www.pennsylvaniacivilrightslawnetwork.comlmedialPleadings in _ Disciplinary/KingsBench.pdf

The new link contains the King's Bench Petition, but does not attach all of the exhibits. However, as shown in the attached screen captures, the link to the original posting is still active. (Screen Captures, attached hereto as Exhibit D).This screen capture clearly illustrates that the posting from which the Township Defendants obtained the letter still exists on Mr. Ostrowski's website, but without any link from the main page. Mr. Bailey's unethical and untruthful response to the Township Defendants' Reply must result in the imposition of significant sanctions in order to dissuade Mr. Bailey from attempting similar underhanded techniques in the future.

(Doc. 268-1, pp. 3-5)

This surreply alleges potentially serious professional misconduct by counsel, the misrepresentation of factual matters and the alteration of the provenance of exhibits tendered to the court.  While we will grant this motion to file a surreply brief, and defer any further sanctions litigation pending completion of the merits litigation in this case, given the gravity of this allegation, and in order to be completely fair to plaintiffs' counsel, we will provide counsel with the opportunity to file a limited sur-rebuttal submission at this time.

Because the surreply simply raises factual matters, and we are deferring legal argument on sanctions issues, counsel should refrain from any legal argument in this

sur-rebuttal. We will, at a later date provide all parties with additional opportunities to argue their respective positions, if they choose to do so. Counsel should also refrain from engaging in any form of personal invective. Instead, this sur-rebuttal should be limited to a factual declaration regarding whether the web-postings cited by defense counsel were changed; when they were changed; why they were changed; by whom they were changed; the purpose of the change; and whether plaintiffs' counsel knew of the change in these website posting when he made his factual representations to this Court regarding the content of these website postings in his reply brief. If the plaintiffs' counsel chooses to file a sur-rebuttal limited to the issues set forth by the Court he must do so on or before March 16, 2012. If counsel chooses not to file a factual sur-rebuttal addressing these factual issues then the Court may accept the factual matters set forth in the surreply as uncontested.

## III.   Conclusion

Accordingly, for the foregoing reasons:

1.     The plaintiffs' motion to recuse (Doc. 260), is DENIED.

2.     The parties' various sanctions requests, (Doc. 125) are DENIED without prejudice to renewal of these sanctions matters by motion of either party within 30 days of the conclusion of the merits litigation in this case.

3.      The defendants' motion for leave to file a surreply brief is GRANTED. (Doc. 268)

4.      Given the gravity of the allegations set forth in this sur-reply brief and in order to be completely fair to Plaintiff's counsel, we will provide counsel with the opportunity to file a sur-rebuttal submission, and ORDER the plaintiff's counsel to file a sur-rebuttal.  This sur-rebuttal must be limited to a factual declaration regarding whether the web-postings cited by defense counsel were changed; when they were changed; why they were changed; by whom they were changed; the purpose of the change; and whether plaintiffs' counsel knew of the changes in these website postings when he made his factual representations to this Court regarding the content of the website postings in his reply brief.  If the plaintiffs' counsel chooses to file a sur-rebuttal limited to the issues set forth by the Court he must do so on or before <u>March 16, 2012</u>.  If counsel chooses not to file a factual sur-rebuttal addressing these factual issues then the Court may accept the factual matters set forth in the surreply as uncontested.

So ordered this 5th  day of March  2012.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge