**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES BRESLIN,  et al.,** | : | **Civil No. 1:09-CV-1396** |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Judge Stengel)** |
| | : | |
| **DICKINSON TOWNSHIP, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.  Introduction

At its best, litigation is a process of creative conflict, where the well-reasoned clash of ideas reveals light, clarity and truth.  At its worst, litigation can become a fractious friction, a clamor of condemnation which produces heat and smoke, but little light.

With this basic truth in mind we turn to the instant case, which comes before us for consideration of motions for summary judgment filed by the Defendants. (Docs. 195 and 201)  These motions, and in particular the Plaintiffs' response to the motions, underscore the cardinal virtue of clarity in life, and litigation.  Thus, we are constrained at the outset of this report and recommendation to briefly address the nature of the pleadings, and particularly the Plaintiffs' response to these motions.

Two factors compel us to briefly address this issue before turning to the merits of these motions.

First, we are compelled to address this matter at the outset in order to avoid mischievous confusion by Plaintiffs' counsel, who has recently–and erroneously– taken the position that we must specifically comment upon all of the various and sundry materials which counsel submits in opposition to a summary judgment motion.[1]   In fact, it is the Plaintiffs' recent insistence that we specifically address these submissions in detail that now compels us to identify the shortcomings in his current filings.  While we  regard the Plaintiffs' view on this issue as incorrect, and believe that we need only comment on relevant and probative matters submitted by counsel, out of an abundance of caution we are taking this opportunity to do what the Plaintiffs' counsel has recently insisted that we must do, and discuss the nature and quality of his current pleadings.

More fundamentally, it is appropriate to briefly address this issue since the Plaintiffs' submissions have not added clarity to this process but have actually compounded confusion regarding both the nature of the Plaintiffs' claims and the status of this litigation.  Several recurring and regrettable themes run through these

---

[1]See In re Roger Snyder, Motion for Extraordinary Relief, (3d Cir. March 15, 2012).

submissions, themes which add heat and smoke to this litigation, but cast little light on the issues properly before the Court.  First, many of the Plaintiffs' submissions either ignore, or discount, the law of the case.  Thus, the Plaintiffs' submissions include extended references to matters which are time barred;[2] multiple assertions relating to parties and claims which have been dismissed from this lawsuit;[3] and frequent citations to matters which fall outside and after the time frame of the events alleged in the complaint.[4]

In other instances, the submissions lack any evidentiary integrity or value. Thus, the Plaintiffs submit statements containing their personal opinions, which have little or no evidentiary value, documents whose provenance cannot be readily ascertained, and odd artifacts like newspaper clippings and editorials.[5]  In many instances, these submissions plainly are not the type of admissible evidence required

---

[2]See, e.g., Doc. 223, Exs. AI, AJ, AZ, BA,  BB, BQ, BT, BU, CP, CQ, CU, CW.

[3]See, e.g., Doc. 211, which contains multiple references to dismissed defendants and counts, and Doc. 212.

[4]See, e.g., Doc. 223, Exs. S, U, Z, AB, AK, AM, AN, AO, AP, AS, AT, AU, AY, BL, CC, CS, CZ.

[5]See, e.g., Doc. 223, Exs. Q, U, X, Y, Z, AA, AY, BD, BF, BG, BN, BO, CE, CI, CL, CM, CN, CP.

to raise material issues of fact, and their inclusion in the Plaintiffs' voluminous

pleadings, impedes the Court's search for the truth.[6]

---

[6]Indeed, we note that Defendants have moved to strike these exhibits.(Docs. 230 and 237)  Rule 12(f) of the Federal Rules of Civil Procedure, in turn,  governs motions to strike pleadings and provides, in part, that:

> **(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f).

While rulings on motions to strike rest in the sound discretion of the court, <u>Von Bulow v. Von Bulow</u>, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987), that discretion is guided by certain basic principles. Because striking a pleading is viewed as a drastic remedy, such motions are "generally disfavored." <u>Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc</u>., 677 F.2d 1045, 1057 (5th Cir. 1982). As one court has aptly observed: "striking a party's pleadings is an extreme measure, and, as a result, . . .  '[m]otions to strike under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.' <u>Lunsford v. United States</u>, 570 F.2d 221, 229 (8th Cir.1977) (citing 5 <u>Wright & Miller, Federal Practice and Procedure. Civil</u> § 1380 at 783 (1969)). <u>See also</u> <u>Resolution Trust Corp. v. Gibson</u>, 829 F.Supp. 1103, 1106 (W.D.Mo.1993); 2 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 12.37[1] (3d ed. 2000)." <u>Stanbury Law Firm v. I.R.S.</u>, 221 F.3d 1059, 1063 (8th Cir. 2000). In practice, courts should exercise this discretion and strike pleadings only when those pleadings are both "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party. <u>Ruby v. Davis Foods, Inc</u>., 269 F.3d 818, 820 (7th Cir. 2001). In this case, while we find that many of these exhibits lack evidentiary value, we conclude that some may be probative of issues remaining in this lawsuit. Furthermore, as to those exhibits which are not relevant, we are able to discern their lack of evidentiary value. Therefore, we do not believe that the inclusion of these irrelevant exhibits prejudices the Defendants in a way which compels us to strike the exhibits, and these motions will be denied.

Furthermore, when the Plaintiffs do submit materials of potential evidentiary value which are relevant to the issues at hand, they often do so in a particularly obscure fashion.  For example, the Plaintiffs have included in their response to this summary judgment motion a document, Exhibit P, (Doc. 221-1-14), which consists of more than 730 pages of material embracing many years of township board of supervisors meetings.  The Plaintiffs then refer throughout their pleadings to this exhibit, but in a vague fashion without any further citations to what within this voluminous exhibit might speak in a probative way to the issues in this case.

This confusion in the submission of exhibits is paralleled by the preparation of the counter-statement of material facts required by Local Rule 56.1.  To facilitate the process of resolving summary judgment motions this Court, through Local Rule 56.1, has directed that:

> A motion for summary judgment filed pursuant to Fed.R.Civ.P.56, *shall be accompanied by a separate, short and concise statement of the material facts*, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment *shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph*, as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

L.R. 56.1(emphasis added).

5

The ability of this Court to regulate summary judgment practice through enactment of Local Rule 56.1, has long been recognized by the appellate courts, which have repeatedly sustained District Court efforts to enforce compliance with this rule. See, e.g., Aubrey v. Sanders, 346 F. App'x 847 (3d Cir. 2009); Smith v. Addy, 343 F. App'x 806 (3d Cir. 2009); Conn v. Bull, 307 F. App'x 631 (3d Cir. 2009).  As we have noted, "[t]he purpose of this rule is obvious: it enables the court to identify contested facts expeditiously and prevents factual disputes from becoming obscured by a lengthy record." Pinegar v. Shinseki, No. 07-313, 2009 WL 1324125, *1 (M.D.Pa. May 12, 2009).  To achieve this goal:

> Pursuant to Local Rule 56. 1, a party moving for summary judgment must supply "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." L.R. 56.1. Local Rule 56.1 requires counsel to analyze the record evidence, identify relevant inferences of fact reasonably drawn from that evidence, and provide to the court a material statement of facts to which there is no genuine issue. See Gantt v. Absolute Machine Tools, Inc., No. 1:06–CV–1354, 2007 WL 2908254, at *3 (M.D.Pa. Oct. 4, 2007). The purpose of this rule is to "structure a party's summary judgment legal and factual theory into a format that permits and facilitates the court's direct and accurate consideration of the motion." See Hartshorn v. Throop Borough, Civ. A. No. 3:07–CV–01333, 2009 WL 761270, at *3 (M.D.Pa. Mar.19, 2009) ( quoting Gantt, 2007 WL 2908254, at *3 (internal quotations omitted)).

Savidge v. Donahoe, No. 08-2123, 2011 WL 3568274, *2 (M.D.Pa. Aug. 12, 2011).

Given the important purposes served by Local Rule 56.1 in providing structure and coherence to summary judgment presentations, this Court has broad discretion in addressing the failure of parties to fully comply with this rule.  In the exercise of that discretion we may deem admitted facts which are not properly contested by a party opposing a summary judgment motion.  See, e.g., Aubrey v. Sanders, 346 F.App'x 847 (3d Cir. 2009); Smith v. Addy, 343 F. App'x 806 (3d Cir. 2009); Conn v. Bull, 307 F.App'x 631 (3d Cir. 2009).  We can also strike pleadings that do not comport with the requirements of this local rule.  See Hartshorn v. Throop Borough,  No. 07–01333, 2009 WL 761270, at *3 (M.D.Pa. Mar.19, 2009).  In other cases:

> [T]he court can consider several options. For example, the court could . . . . strike those portions of the statement of facts that it finds objectionable. This, however, would hinder rather than facilitate the court's direct and accurate consideration of plaintiffs' motion for partial summary judgment because, in addition to requiring the court to review the statement of facts line-by-line separating argumentative statements from properly supported factual assertions, it would ultimately leave the court with a still lengthy statement of facts riddled with stricken statements. Alternatively, the court could, . . . analyze . . . statement of facts trying to separate useful information from improper or unsupported entries. However, such deciphering is an ineffective use of the court's time and resources and it runs contrary to the central purpose of a statement of material facts which is to *aid* the court to *expeditiously* identify factual arguments.

Park v. Veasie, No. 09-2177, 2011 WL 1831708, *3 (M.D.Pa. May 11, 2011).

Here, the Plaintiffs' principal counter-statement of facts, (Doc. 211), is an 118 page exegesis, which oftentimes devotes pages to parenthetical commentaries on matters which are not germane to this litigation.   Thus, we cannot say that this counter-statement of facts in any way comports with Local Rule 56.1's requirement that the statement be "a separate, short and concise statement of the material facts."   This inability to comport with the rules, in turn, has left this Court to engage in a protracted "deciphering [which] is an ineffective use of the court's time and resources and it runs contrary to the central purpose of a statement of material facts which is to *aid* the court to *expeditiously* identify factual arguments."   <u>Park v. Veasie</u>, No. 09-2177, 2011 WL 1831708, *3 (M.D.Pa. May 11, 2011).[8]

These same unfortunate themes are reflected in the Plaintiffs' briefs, which at times contain parenthetical asides to counsel's clerical staff, commentaries on what counsel perceives as prior errors by other judges, ruminations about pleadings that counsel may file in this and other cases in the future, and arguments relating to claims

---

[8]Furthermore, in some instances, the Plaintiffs' counsel inserts editorial comments, parentheticals and other non-evidentiary and argumentative assertions into this statement of fact, thus conflating fact and argument. The dangers which arise from this practice, which blurs the line between fact and argument, can be seen in other recent pleadings filed by the Plaintiffs' counsel, such as a recent motion filed by Plaintiffs, which contained what Plaintiffs' counsel now belatedly acknowledge were wholly inaccurate factual accusations against the Defendants, and misrepresented facts to the Court. (Docs. 273 and 274) There is an object lesson here for counsel:  Know the facts before you state facts.

and parties who have been dismissed from this case.[9]  None of these observations are useful or persuasive, and all of these extraneous matters impede, rather than promote, the resolution of the Plaintiffs' claims.

Notwithstanding these hurdles, we have had the opportunity to review the parties competing submissions, and have reached a recommended resolution of the pending motions for summary judgment.  For the reasons set forth below, we recommend that the motions be granted, in part, and denied, in part, as follows:

## II.    Statement of Facts and of the Case

### A.    Procedural History

In this case we do not write upon a blank slate.  Quite the contrary, this matter comes before the Court on summary judgment motions which follow years of often contentious litigation.  That litigation now frames and shapes the remaining issues in this case in ways which may not be fully acknowledged, or appreciated, by some parties.

---

[9]See, e.g., Doc. 212, p. 5 (discussion regarding future anticipated litigation), p.p.17 (parenthetical request to re-instate dismissed claims), p. 19 (testimonial narrative regarding meeting attended by counsel); Doc. 212, p. 5 (discussion regarding future anticipated litigation), p.10 (parenthetical aside to clerical support staff).

This lawsuit began on July 17, 2009, when the Plaintiffs filed a multi-faceted complaint against the Defendants. (Doc. 1)  Upon being served with copies of this complaint, the Defendants promptly moved on August 21, 2009, and October 5, 2009, to dismiss the complaint for failure to state a claim upon which relief could be granted. (Docs. 12 and 24)  The Plaintiffs responded to these motions by first  delaying these proceedings and seeking additional time in which to respond to the motions. (Docs. 14 and 16)  After filing a brief in opposition to the motion to dismiss which did not conform with the requirements of the local rules and was ordered stricken, (Doc. 19), the Plaintiffs lodged an amended complaint with the Court on October 20, 2009. (Doc. 36)

The Defendants, once again, promptly moved to dismiss this amended complaint. (Docs. 39 and 41)  While these motions to dismiss were pending before the Court, the Plaintiffs engaged in yet another effort to re-shape their complaint, filing a second motion to amend this complaint on July 12, 2010. (Doc. 63)  The Defendants opposed this motion to amend, (Docs. 65 and 66), and on August 19, 2010, the District Court entered an opinion and order which disposed of these pending motions to dismiss, and further amend, the Plaintiffs' complaint. (Doc.69)

In this August 19, 2010, opinion the District Court characterized the Plaintiffs' complaint as alleging claims based upon "unlawful retaliation under the First

Amendment, unlawful prohibitions on speech under the First Amendment, and denial of the right to equal protection of the laws under the Fourteenth Amendment, all pursuant to 42 U.S.C. § 1983.  Plaintiffs also allege a state law defamation claim against Defendants." (Id., p. 9.)  After a careful analysis of the merits of these claims, the District Court entered a series of rulings, defining the scope and nature of the Plaintiffs' remaining claims in this lawsuit. (Id.)

First, the District Court found that the applicable two-year statute of limitations barred consideration of any claims pre-dating July 17, 2007. (Id., pp. 9-11.)  The District Court also concluded that the Plaintiffs' equal protection and state law defamations claims failed as a matter of law. (Id., pp. 18-21.)  As for the various First Amendment claims originally advanced by the Plaintiffs, the District Court concluded that a host of these contentions failed to state free-standing constitutional tort claims.  These First Amendment claims which were dismissed by the District Court in August of 2010 included claims relating alleged name-calling by the Defendants, threats of lawsuits exchanged between the parties, and what the Plaintiffs characterized as an improper write-in campaign by the Defendants to elect them to township offices.  All of these claims were dismissed by the District Court. (Id., pp. 14-16.)

As to the remaining First Amendment claims articulated by the Plaintiffs, the District Court found that the Plaintiffs' complaint completely failed to describe any

involvement by four Defendants[10] in the matters alleged by the Plaintiffs.  Therefore,

these four Defendants were dismissed from this action.  Having disposed of these

various claims and parties, the District Court then entered an order which clearly

defined the scope of the remaining litigation in this lawsuit, and stated that:

> [T]he motions to dismiss are granted in part and denied in part. The
> motions are **GRANTED** with respect to all claims EXCEPT the claims
> that:
>
> 1. Defendant Jones violated Plaintiffs' First Amendment rights by
> prohibiting their speech at Township meetings;
>
> 2. Defendant Jones retaliated against Plaintiffs by curtailing their speech
> at Township meetings in 2008;
>
> 3. Defendants Jones and Schorpp retaliated against Plaintiffs Breslin and
> Thompson for failing to disclose public documents pursuant to valid
> document requests.
>
> Defendants Reeder, Zizzi, and Perkins are **DISMISSED**. **IT IS
> FURTHER ORDERED** that Plaintiffs' motion to amend complaint
> (Doc. No. 63) is **DENIED as filed.** Plaintiffs are given twenty (20) days
> from the date of this order to file a new motion to amend their complaint,
> if doing so would not be inequitable or futile upon consideration of the
> guidelines provided in  the foregoing  memorandum.

(Id., p.25.)

---

[10]Defendants Allyn Perkins, Daniel Wyrick, Anthony Zizzi, and Ronald
Reeder.

Despite the District Court's August 19, 2010 express notice to the Plaintiffs that "Plaintiffs are given twenty (20) days from the date of this order to file a new motion to amend their complaint, if doing so would not be inequitable or futile," Plaintiffs' counsel took no steps to timely file an amended complaint in this matter.  Indeed, the Plaintiffs took no action whatsoever to supplement or amend this complaint for eleven months, until July 15, 2011, when the Plaintiffs filed a motion to supplement or amend their complaint. (Doc. 169.)[11]

Following lengthy and contentious discovery proceedings, the Defendants filed motions for summary judgment, seeking summary judgment on behalf of the remaining Defendants with respect to these specifically defined First Amendment and First Amendment retaliation claims.  (Docs.195 and 201)  The Plaintiffs have responded to these motions, submitting thousands of pages of material, only a fraction of which appears to relate to the issues that actually remain in this litigation. (Docs.

---

[11]We have recommended that this motion be denied, finding the motion to be both untimely and in a number of material respects futile. (Doc. 241.) The Plaintiffs' response to this report and recommendation has been somewhat erratic. First, the Plaintiffs objected to this recommendation. (Docs. 249 and 250.) The Plaintiffs then moved to withdraw their motion to amend their complaint, thus conceding that the complaint should not be amended. (Doc. 256.) After moving to withdraw this motion, and essentially conceding that their complaint should not be amended, the Plaintiffs then moved to recuse this Court, apparently in part because of our ruling in this report and recommendation, a ruling that they now affirmatively accepted by moving to withdraw their motion to amend and supplement their complaint.

220-224)  These motions are fully briefed, and subject to the observations which we have made at the outset of this report and recommendation, are now ripe for resolution.

### B.    <u>Statement of Facts</u>

With respect to the remaining claims and parties in this litigation, we find the following essentially undisputed facts:

The remaining Defendants in this action are Edward Schorpp and Raymond Jones.  Mr. Schorpp is an attorney who was employed as the Solicitor for Dickinson Township from January 2006 through September 2009.  (Doc. 202, ¶1)  Mr. Jones is a Dickinson township supervisor. (<u>Id</u>., ¶12.)

The Plaintiffs, Charles Breslin, Paul Cunningham,  and Phillip Thompson, are members of an organization called Concerned Citizens of Dickinson Township, whose goal was to work on land development issues, public safety and environmental concerns.  (Doc. 196 ¶¶16 and 17)  The Board of Concerned Citizens of Dickinson Township included Plaintiffs Breslin, Thompson, and Cunningham. (<u>Id</u>., ¶18.)  Over the years, the Plaintiffs have also been prolific participants in township board of supervisor meetings.  Thus, Mr. Breslin has attended 49 such meetings since 2006, and has spoken at 32 of these meetings. (<u>Id</u>., ¶¶122 and 123.)  Mr. Cunningham, in turn,

has attended 46 board of supervisors meetings since 2006, and has spoken out at 22 of these meetings. (Id., ¶¶124 an 125.)  Mr. Thompson has attended 45 township supervisor meetings since 2006, and has spoken at 31 of these meetings. (Id., ¶¶126 and 127.)

In connection with their community activities, the Plaintiffs have also lodged numerous Right-to-Know requests under Pennsylvania state law, seeking township records and documents relating to a variety of issues.  Thus, since 2009, when the current Right-to-Know law went into effect, Mr. Breslin has submitted 21 Right-to-Know requests for information from township officials.  (Id., ¶110.)  Mr. Thompson, in turn, has submitted 38 Right-to-Know requests to Dickinson Township officials since 2009.  (Id., ¶114.)  These requests have been processed by the township's Right-to-Know Officer, Laura Portillo, who relied upon the township solicitor, Defendant Schorpp, for legal advice when assessing these requests. (Doc. 220-13, Portillo deposition)

Many of the Plaintiffs' requests for information, and statements at township board of supervisor meetings, related to the Plaintiffs' concerns regarding alleged mismanagement and improprieties by township officials, including Defendants Jones and Schorpp. (Id., ¶29.)  Moreover, by the Fall of 2008, some of the Plaintiff's public comments at board of supervisor meetings had become prolonged.  Thus, in October

2008, Mr. Breslin had asked to be placed on the township board of supervisors meeting agenda to discuss financial matters in Dickinson Township. (Id., ¶35.) While this agenda request was denied, Mr. Breslin was informed that he could speak during the public comment period of the meeting. (Id., ¶36.) Taking advantage of that opportunity, on October 20, 2008, Mr. Breslin read a 40-page statement at this meeting in an address which entailed one hour in duration. (Id., ¶¶ 37-38.)

The following month, at a board of supervisors meeting scheduled on November 18, 2008, Defendant Jones responded to the Plaintiffs' growing criticism, reading a statement which, in part, addressed concerns voiced by the Plaintiffs, and defended the conduct of township officials, including both Defendants Jones and Schorpp. (Doc. 220-20) This statement went on, however, to identify the Plaintiffs by name, described the Plaintiffs as "malcontents", and rebuked the Plaintiffs for allegedly engaging in personal attacks upon township officials and staff. (Id.) Mr. Jones' statement concluded with an announcement that the board would no longer permit personal attacks on officials during the public comment period of meetings, stating: "Our public comment period is clothed under the law with openness for comment on matters of current business, not for personal attacks of an historic origin. We trust these individuals will govern their future conduct accordingly." (Id.)

A township supervisor meeting was then conducted on December 8, 2008. (Doc. 196, ¶¶31-33, and 77-80)  Mr. Breslin and Mr. Thompson both attended this meeting, and endeavored to speak, as each sought to rebut the November 18, 2008 "malcontent" statement read by Defendant Jones and specifically directed at them.  The Plaintiffs were not permitted to fully address Defendant Jones' statement, because Thompson described his request as related to "historic" matters, and Jones concluded that, since these remarks pertained to historic matters, and not current township business, the remarks were out of order.  (Id.)

Six months after these meetings in late 2008, the township undertook to adopt a revised public meeting policy.  (Id., ¶¶6-15.)  The revised public comment policy was first adopted in June, 2009.  (Id.)  This policy, which went through several revisions between 2009 and 2010, limited public comment in township board meetings to township residents and taxpayers; prohibited "interrogation" of township officials; allowed officials to rule out of order any scandalous impertinent and redundant comment, and set limitations on comments in terms of their duration, as well as requiring that comments be germane to current township business.  (Id.)  While the parties dispute the events which led to the adoption of this policy, the written policy contained no viewpoint restrictions and it appears undisputed that, consistent with the

policy, the Plaintiffs have been permitted on numerous occasions to speak and address these meetings during the public comment portions of the meetings.

Following this November 2008 township supervisor meeting in which the Plaintiffs were characterized as "malcontents", Messrs. Breslin and Thompson also continued to obtain information on township governance through Right-to-Know law requests, submitting multiple requests to township officials in 2009. These requests were processed by the township's Right-to-Know Officer, Laura Portillo, who often relied upon the township solicitor, Defendant Schorpp, when assessing these requests. (Doc. 220-13, Portillo deposition)

While the parties generally characterize the Right-to-Know request process in different ways, these contrasting views are bounded by certain undisputed facts. These essentially undisputed facts reveal that beginning in 2009 Plaintiffs Breslin and Thompson were frequent requesters under the Right-to-Know law (Id., ¶¶105-121.) All of these requests have been responded to by the township, which has either granted the requests, or denied specific requests in whole or in part. (Id.) The Plaintiffs were entitled to appeal denial decisions, and have pursued some appeals, while accepting the township's decisions regarding particular requests in a number of instances. (Id.) It is also undisputed that on one occasion in March of 2009, the township denied a Right-to-Know request filed by Mr. Thompson, and based this decision on an assertion

that Thompson was a "disruptive" requester. (Doc. 223-5, p.14-15)   Defendant

Schorpp participated in the preparation of this response denying Thompson's request.

Mr. Thompson appealed this decision to the Pennsylvania Office of Open Records.

(Doc. 196-3, pp.33-38), which granted Mr. Thompson's appeal on May 18, 2009. (Id.)

In granting this appeal, the Office of Open Records specifically concluded that Mr.

Thompson was not a disruptive requester as that term is defined by the Right-to-Know

law.  (Id.)   The township then responded to this request, and apparently has not

repeated its claim that Thompson is a disruptive requester as a ground for denying

requests.

## II.   <u>Discussion</u>

### A.   <u>The Law of the Case Doctrine Limits the Issues in This Lawsuit To Those Identified by the District Court in its August 19, 2010 Opinion</u>

At the outset, as we have noted, the litigation of these motions has been

impeded by some fundamental confusion regarding a basic legal tenet, the law of the

case doctrine.  Indeed, the Plaintiffs have devoted literally hundreds of pages of

pleadings to discussion of matters which are time-barred by the statute of limitations;

entail parties and claims which were dismissed from this litigation 18 months ago; or

involve matters which fall outside the complaint, and which were never timely

included in this litigation because Plaintiffs' counsel ignored the deadline for filing an amended complaint set by the District Court on August 19, 2010.

While the Plaintiffs invite us to indulge in the re-litigation of these issues and claims, we believe that the law of the case doctrine cautions against this course of action. "Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances. . . . . The purpose of this doctrine is to promote the 'judicial system's interest in finality and in efficient administration. Todd & Co., Inc. v. S.E.C., 637 F.2d 154, 156 (3d Cir. 1980).' " Hayman Cash Register Co. v. Sarokin, 669 F.2d 162, 165 (3d Cir. 1981).   The contours of this settled doctrine were recently described by the United States Court of Appeals for the Third Circuit in the following terms:

> In  Arizona v. California, 460 U.S. 605 (1983), the Supreme Court noted:
>
>> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.
>
> Id. at 618 (citations omitted).   The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'"

In re Pharmacy Benefit Managers Antitrust Litigation, 582 F.3d 432, 439 (3d Cir.2009)(reversing arbitration order in antitrust case on law-of-the-case grounds)(citations omitted).  It is clear that "[t]he ... doctrine does not restrict a court's power but rather governs its exercise of discretion." Id. (quoting Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron Inc., 123 F.3d 111, 116 (3d Cir.1997)) (citations omitted).  In exercising that discretion, however, courts should "be loathe to [reverse prior rulings] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." Id. (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)).  In addition to that narrow class of cases where the prior ruling was manifestly unjust, the type of "extraordinary circumstances" that warrant a court's exercising its discretion in favor of reconsidering an issue decided earlier in the course of litigation typically exist only where (1) new evidence is available, or (2) a supervening new law has been announced. Id. (citing, Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997)).

Here, the law of the case is clear, and has been clearly stated since August 19, 2010, when the District Court entered an order which, in precise terms, directed that:

> [T]he motions to dismiss are granted in part and denied in part. The motions are **GRANTED** with respect to all claims EXCEPT the claims that:

1. Defendant Jones violated Plaintiffs' First Amendment rights by prohibiting their speech at Township meetings;

2. Defendant Jones retaliated against Plaintiffs by curtailing their speech at Township meetings in 2008;

3. Defendants Jones and Schorpp retaliated against Plaintiffs Breslin and Thompson for failing to disclose public documents pursuant to valid document requests.

Defendants Reeder, Zizzi, and Perkins are **DISMISSED**. **IT IS FURTHER ORDERED** that Plaintiffs' motion to amend complaint (Doc. No. 63) is **DENIED as filed.** Plaintiffs are given twenty (20) days from the date of this order to file a new motion to amend their complaint, if doing so would not be inequitable or futile upon consideration of the guidelines provided in the foregoing  memorandum.

(Doc. 69, p.25)

The Plaintiffs invite us to ignore and discount the law of the case, but extend this invitation without addressing in any fashion the legal standards that govern such requests.  Thus, the Plaintiffs never acknowledge that courts should "be loathe to [reverse prior rulings] in the absence of extraordinary circumstances."  Nor do the Plaintiffs endeavor to articulate any of the type of extraordinary circumstances which would justify re-examination of these claims.  Thus, the Plaintiffs' pleadings contain no reasoned argument that:(1) new evidence is available, or (2) a supervening new law has been announced.  Neither do the Plaintiffs show that "the initial decision was

clearly erroneous and would make a manifest injustice." In short, the Plaintiffs simply urge us to ignore the law of the case and act in an unprincipled fashion, precisely the type of expedient course which they decry in others. In addition, the Plaintiffs attempt to argue First Amendment retaliation and interference claims based upon events which post-date the filing of this complaint and amended complaint, and are not properly part of this litigation. These efforts are also unavailing since "actions taken by Defendants after [a plaintiff] filed his complaints do not qualify as retaliatory actions. See Eichenlaub v. Township of Indiana, 385 F.3d 274, 282 (3d Cir.2004)." Slavoski v. Pawlowsk, No. 11-2694, 2012 WL 377676,* 2 (3d Cir. Feb. 7, 2012).

We should decline these invitations to expand this lawsuit beyond the legal and factual contours defined by the complaint and the law of the case. Since the law of the case doctrine limits the issues in this litigation, it is recommended that this Court decline the Plaintiffs' invitation to ignore this settled doctrine and re-open and re-litigate claims that have been previously resolved in this lawsuit. With the issues before us defined in this fashion, we turn to the parties' summary judgment motions.

**B**.     **Rule 56–The Legal Standard**

With respect to the remaining First Amendment and First Amendment retaliation issues pending in this litigation, the Defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which

provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality."  Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on

assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of

fact which would preclude summary judgment.  With respect to such claims, it is well-settled that:  "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing  Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005).  Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment.  Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104,

26

2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982).  "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)). In particular, a plaintiff cannot avoid summary judgment by simply relying upon a self-declaration that he has authored which relies not on evidence, but on the plaintiff's own interpretation of events and, essentially, opinion testimony. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (the nonmoving party may not defeat a properly supported summary judgment motion by simply substituting the

"conclusory allegations of the complaint or answer with the conclusory allegations of an affidavit."); Iseley v. Beard, No. 02-2006, 2009 U.S. Dist. LEXIS 52014, *32 (M.D. Pa. Mar. 30, 2010) (conclusory allegations contradicted by documentary evidence cannot be accepted as true).

Yet, while "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment," Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007). Therefore, in a case where the parties' pleadings reveal disputes regarding the admissibility of specific evidence, the principles governing consideration of summary judgment motions –which enjoin us to examine the evidence in a light most favorable to the party opposing the motion–also call upon us to resolve all genuine disputes concerning the admissibility of specific items of evidence in favor of the party opposing the motion. This principle applies with particular force to factual disputes which relate to matters of motive or intent since it is well-settled that: "The motive or absence of motive of a party to engage in conduct alleged by another party is relevant to determining

whether a genuine issue of fact exists. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 596 (1986)." <u>Berda v. CBS Inc.</u>, 800 F.Supp. 1272, 1276 (W.D.Pa), <u>aff'd</u>., 975 F.2d 1548 (3d Cir. 1992).

Thus, Rule 56's defining principles guide us in addressing the remaining legal claims in this case; namely, the question of whether Defendant Jones violated Plaintiffs' First Amendment rights by prohibiting their speech at township meetings, and the separate issue of whether Defendants Jones and Schorpp retaliated against the Plaintiffs by curtailing their speech at township meetings in 2008 and by failing to disclose public documents pursuant to valid document requests.  In addressing these remaining claims, we are mindful of the fact that substantive First Amendment claims, and First Amendment retaliation claims are separate and distinct allegations, which have separate elements of proof.  Moreover, given these differences we recognize that the adoption of policies and practices which comport generally with First Amendment standards may still violate individual rights in specific instances if those policies are enforced or applied in a retaliatory fashion.  Indeed, courts have found that conduct which as a matter of law does not broadly violate substantive First Amendment standards may still give rise to potentially liability on specific First Amendment retaliation claims.  <u>See</u> <u>Eichenlaub v. Twp of Indiana</u>, 385 F.3d 274 (3d Cir. 2004), <u>Mobley v. Tarlini</u>, 641 F.Supp.2d. 430 (E.D. Pa. 2009).  With these legal tenets in

29

mind, we turn to the standards that govern substantive First Amendment and First Amendment retaliation claims.

## C.   First Amendment Claims in a Limited Public Forum–Legal Standards

Turning first to the Plaintiffs' claims that the Defendants violated their First Amendment rights by restricting their opportunities to comment during township board of supervisor meetings, in assessing these claims under the First Amendment it is well-settled that the factual context of the communication often determines both the scope of permissible regulation of speech and the outcome of First Amendment claims.  Thus, while"[t]he government's power to prevent or limit speech on public property is carefully circumscribed by the First Amendment," it is also clear that, "[n]ot all public property is open to unfettered public speech, for the 'First Amendment does not guarantee access to property simply because it is owned or controlled by the government.'  Government facilities that are not committed to public communicative activity may regulate speech by the general public so long as that regulation is reasonable and not based on opposition to a particular viewpoint.  That is because the government 'may legally preserve the property under its control for the use to which it is dedicated.'" Eichenlaub v. Township of Indiana, 385 F.3d 274, 279 -280 (2d Cir. 2004)(citations omitted).

Case law construing the scope of the First Amendment's protections for speech on public property recognize two types of factual contexts in which these issues arise. First:

> [P]ublic areas that are open to general "assembly and debate" as a matter of tradition or by specific government designation are characterized as a public forum, within which speech can be limited only narrowly. Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677, 118 S.Ct. 1633, 140 L.Ed.2d 875 (1998), quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); see also Whiteland Woods, L.P. v. Township of West Whiteland, 193 F.3d 177, 182 n. 2 (3d Cir.1999). Streets and parks are examples of traditional public forums. See, e.g., Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Public forums are also established when the government opens property for general "expressive activity," Perry Educ. Ass'n, 460 U.S. at 45, 103 S.Ct. 948, as in the case of theaters, Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 555, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). Absent a compelling interest, speech in a public forum may not be regulated based upon content. Furthermore, in a public forum any restrictions as to time, place, and manner of speech (1) must be unrelated to content; (2) must be " 'narrowly tailored to serve a significant governmental interest' "; and (3) must allow alternative ways of communicating the same information. Whiteland Woods, 193 F.3d at 182 n. 2 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)).

Eichenlaub v. Township of Indiana, 385 F.3d 274, 280 (3d Cir. 2004).

However, it is also undisputed that other public venues permit greater regulation of speech under the First Amendment.  These venues are known as limited public forums, and as to these limited public forums speech "regulation of a limited forum may survive under a test that is less strict than that applied in the case of a general

open forum.  Good News Club v. Milford Cent. Sch., 533 U.S. 98, 106, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001).  Under this refined test for reviewing limited forum restrictions, content-based restraints are permitted, so long as they are designed to confine the 'forum to the limited and legitimate purposes for which it was created.' Rosenberger, 515 U.S. at 829, 115 S.Ct. 2510; see also Brody v. Spang, 957 F.2d 1108, 1118 (3d Cir.1992).  Two limitations remain.  Any restrictions on speech must be viewpoint neutral and must be "'reasonable in light of the purpose served by the forum.'"  Good News Club, 533 U.S. at 106-07, 121 S.Ct. 2093 (quoting Cornelius v. NAACP Legal Def. & Ed. Fund, Inc., 473 U.S. 788, 806, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985))."  Eichenlaub v. Township of Indiana, supra.  Thus, "under contemporary public forum jurisprudence, a designated (as opposed to traditional) forum is reviewed under a sliding standard that allows for content-related regulation so long as the content is tied to the limitations that frame the scope of the designation, and so long as the regulation is neutral as to viewpoint within the subject matter of that content." Id. at 281.

Local government meetings, like the township supervisor meetings at issue in this case, are regarded as limited public forums, which are subject to this less rigorous First Amendment analysis.  See, e.g.,Olasz v. Welsh, 301 F. App'x 142 (3d Cir. 2008); Eichenlaub v. Township of Indiana, supra; Galena v. Leone, 711 F.Supp.2d 440 (W.D.

Pa. 2010).  As limited public forums, public comments at the Dickinson Township board of supervisor meetings could be regulated in a variety of ways, consistent with the First Amendment.  For example, it is clear that in limited public forums "public bodies may confine their meetings to specified subject matter," and "matters presented at a citizen's forum may be limited to issues germane to [local] government." Olasz v. Welsh, 301 F. App'x at 145; Eichenlaub v. Township of Indiana, 385 F.3d at 281. Local officials may also impose time, place and manner of expression regulations, provided those rules are viewpoint neutral.  Id.  Indeed, it is recognized that such rules may be necessary to maintain decorum in such forums and prevent repetitive and truculent speakers from "try[ing] to hijack the proceedings, or to filibuster them, [actions which] would impinge on the First Amendment rights of other would-be participants."  Eichenlaub v. Township of Indiana,  385 F.3d at 281.

Applying these benchmarks, courts have repeatedly sustained public meeting policies, like those ultimately adopted in Dickinson Township in 2009, which on their face restrict comments at township meetings to matters that are germane to current issues of local governance, impose decorum requirements on participants, and impose time place and manner of expression rules upon speakers. See, e.g., Olasz v. Welsh, 301 F.App'x 142 (3d Cir. 2008); Eichenlaub v. Township of Indiana, supra; Galena v. Leone, 711 F.Supp.2d 440 (W.D. Pa. 2010); Thornton v. Kirkwood, No. 07-79,

2008 WL 239575 (E.D. Mo. Jan. 28, 2008); <u>Shigle v. Mt. Pleasant Borough</u>, No. 03-

1433, 2005 WL 3070944 (W.D. Pa. 2005).  While such viewpoint neutral regulations

withstand constitutional scrutiny one other principle remains clear:  These regulations

may not mask viewpoint based restrictions on speech and "viewpoint-based

restrictions violate the First Amendment regardless of whether they also serve some

valid time, place, manner interest.  <u>See, e.g.</u>, <u>Good News v. Milford Cent. Sch.</u>, 533

U.S. 98, 106-107, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001);  <u>Rosenberger v. Rector &</u>

<u>Visitors of Univ. Of Va.</u>, 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995);

<u>Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.</u>, 508 U.S. 384, 392-393, 113

S.Ct. 2141, 124 L.Ed.2d 352 (1993)." <u>Monteiro v. City of Elizabeth</u>, 436 F.3d 397,

404 (3d Cir. 2006).

### D.    First Amendment Retaliation Claims–Legal Standards

In addition to these substantive First Amendment standards which govern

speech in limited public forums, the courts have recognized a private cause of action

based upon assertions that public officials have retaliated against an individual due to

the prior exercise of First Amendment rights.  To advance such a First Amendment

retaliation claim:

[A] plaintiff must allege: (1) constitutionally protected conduct, (2)
retaliatory action sufficient to deter a person of ordinary firmness from

> exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003). "[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.' " McKee v. Hart, 436 F.3d 165, 170 (3d Cir.2006) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir.2000)); see also Crawford–El v. Britton, 523 U.S. 574, 589 n. 10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right.").

> Thomas v. Independence Tp., 463 F.3d 285, 296 (3d Cir. 2006).

First Amendment retaliation claims can arise when public officials adopt policies and practices which comport generally with First Amendment standards if those policies are selectively enforced or applied in a retaliatory fashion.  Therefore, actions which as a matter of law do not violate substantive First Amendment standards may still give rise to potential liability on First Amendment retaliation claims if they are undertaken for retaliatory purposes.  See Eichenlaub v. Twp of Indiana, 385 F.3d 274 (3d Cir. 2004)(dismissing substantive First Amendment claim, but remanding retaliation claim).

Causation is a crucial element to any First Amendment retaliation claim; that is, the plaintiff must show a causal connection between his protected activity and some retaliatory conduct.  While causation can occasionally be proven directly, it is often

subject to circumstantial proof.  To establish this crucial component to a constitutional

retaliation claim, a plaintiff must make an exacting showing.  In this setting:

> To establish the requisite causal connection a plaintiff usually must prove
> either (1) an unusually suggestive temporal proximity between the
> protected activity and the allegedly retaliatory action, or (2) a pattern of
> antagonism coupled with timing to establish a causal link. See Krouse v.
> American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson
> v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997). In the absence
> of that proof the plaintiff must show that from the "evidence gleaned
> from the record as a whole" the trier of the fact should infer causation.
> Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished

that:

> A court must be diligent in enforcing these causation requirements
> because otherwise a public actor cognizant of the possibility that
> litigation might be filed against him, particularly in his individual
> capacity, could be chilled from taking action that he deemed appropriate
> and, in fact, was appropriate. Consequently, a putative plaintiff by
> engaging in protected activity might be able to insulate himself from
> actions adverse to him that a public actor should take. The point we make
> is not theoretical as we do not doubt that public actors are well aware that
> persons disappointed with official decisions and actions frequently bring
> litigation against the actors responsible for the decisions or actions in
> their individual capacities, and the  actors surely would want to avoid
> such unpleasant events. Thus, it would be natural for a public actor to
> attempt to head off a putative plaintiff with the unwarranted expenditure
> of public funds. Courts by their decisions should not encourage such
> activity and, by enforcing the requirement that a plaintiff show causation
> in a retaliation case, can avoid doing so as they will protect the public
> actor from unjustified litigation for his appropriate conduct. In this regard

we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Furthermore, when evaluating the causation element of a circumstantially proven retaliation claim, courts are cautioned that:

Thus:

> To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir.2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir.2003). This suggests

that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950, *3 (M.D.Pa. April 30, 2009).

Applying this standard, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks or months separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation. Thus, "[o]ur sister courts have held that a temporal proximity of as little as seventeen days was insufficient to establish causation. See Killen v. N.W. Human Servs., Inc., No. 06-4100, 2007 WL 2684541, at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa. Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. 05-19, 2007 WL 2769718, at *4 (W.D.Pa. Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." Fischer v. Transue, 04-2756, 2008 WL 3981521, *10 (M.D.Pa. Aug. 22, 2008)(holding that temporal proximity of three weeks was insufficient to establish causation).

**E.    With One Exception, The Plaintiffs' First Amendment Claims Fail as a Matter of Law**

**1.    Many of the Plaintiffs' Substantive First Amendment Claims Fail**

Applying these legal guideposts, we find that, with one exception, the Plaintiffs' substantive First Amendment claims fail as a matter of law.

At the outset, we note the immutable fact that, over the years, these Plaintiffs have been afforded substantial opportunities to exercise their First Amendment rights in this limited public forum.  Thus, it is undisputed that Mr. Breslin has attended 49 such meetings since 2006, and has spoken at 32 of these meetings. (Doc. 196, ¶¶122 and 123)  Mr. Cunningham, in turn, has attended 46 board of supervisors meetings since 2006, and has spoken out at 22 of these meetings. (Id., ¶¶124 and 125.)  Mr. Thompson has attended 45 township supervisor meetings since 2006, and has spoken at 31 of these meetings.  (Id., ¶¶126 and 127.)  This extended history of the vigorous exercise of these rights in this particular forum thoroughly rebut any assertion of a widespread, longstanding or wholesale denial of First Amendment freedoms by the Defendants.

Furthermore, with respect to Plaintiff Paul Cunningham, there appear to be no grounds for any substantive First Amendment claims whatsoever.  In this regard, Mr. Cunningham's First Amendment claims appear to be limited to three meritless

assertions.  First, according to Mr. Cunningham, in September of 2006, Defendant Schorpp denied him an opportunity to speak at a meeting.  However, since Cunningham did not file this lawsuit until the summer of 2009, this claim is time-barred by the two-year statute of limitations which applies to constitutional torts. Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

Second, Mr. Cunningham bases a First Amendment claim upon the exercise of First Amendment rights by Defendant Jones, alleging that Jones' November, 2008 statement at a township meeting which characterized Cunningham as a malcontent violated the Plaintiffs' First Amendment rights.  However, the District Court dismissed this claim, and the law of the case doctrine precludes us from re-visiting this previously litigated issue.  See In re Pharmacy Benefit Managers Antitrust Litigation, 582 F.3d 432, 439 (3d Cir.2009).

Finally, Mr. Cunningham alleges a First Amendment violation relating to an alleged restriction upon his right to comment at a March 2011 township supervisor meeting.  This claim fails for two reasons.  First, it is beyond the scope of this complaint, which embraces conduct occurring between 2007 and 2009.   More

fundamentally, none of the individual Defendants who remain in this lawsuit are alleged to have played a direct role in this incident. [12]

Cunningham's failure in this regard to allege direct action by either Defendant Schorpp or Jones is a fatal flaw since it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named Defendant was government supervisory official when the incidents set forth in the complaint occurred.  Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . .  See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,

---

[12]Cunningham's complaints in this regard appear to relate to Township Solicitor Susan Smith, and Township Commissioner Perkins, neither of whom is presently named as a Defendant in this action.

691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

Therefore, Mr. Cunningham's claims are either time-barred, barred by the law of the case or facially without merit as to the Defendants currently named in this action, and these claims should be dismissed.

Furthermore, to the extent that the Plaintiffs simply seek to premise a substantive First Amendment claim upon the enactment of a public comment policy by township officials in 2009, six months after their exchanges with Defendant Jones, these claims also fail. In this regard, it is evident that the Plaintiffs' claims stem in part from a fundamental misconception that the First Amendment gives them an untrammeled right to speak out on any topic of their choosing at any length they choose in this limited public forum. Indeed, Mr. Breslin has stated as much in the course of this litigation, asserting the erroneous view, which regrettably was

apparently never corrected by his own counsel, that the First Amendment conferred upon him an absolute right to read from the telephone book at a township meeting, if he elected to do so. (Doc. 196, ¶¶24-25)

As we have noted, under the First Amendment in a limited public forum like Dickinson Township board of supervisor meetings, public comment could be regulated in a variety of ways, consistent with the constitution. Thus, it is clear that in limited public forums "public bodies may confine their meetings to specified subject matter," and "matters presented at a citizen's forum may be limited to issues germane to [local] government." Olasz v. Welsh, 301 F. App'x at 145; Eichenlaub v. Township of Indiana, 385 F.3d at 281. Local officials may also impose time, place and manner of expression regulations, provided those rules are viewpoint neutral. Id. Indeed, it is recognized that such rules may be necessary to maintain decorum in such forums and prevent repetitive and truculent speakers from "try[ing] to hijack the proceedings, or to filibuster them, [which] would impinge on the First Amendment rights of other would-be participants." Eichenlaub v. Township of Indiana, 385 F.3d at 281. Since the public comment policies adopted by the township in this case, on their face, simply created restrictions on speech that were viewpoint neutral and "'reasonable in light of the purpose served by the forum," Eichenlaub v. Township of Indiana, supra, any

43

facial First Amendment challenge to this policy by the Plaintiffs also fails to state a claim giving rise to an entitlement to damages.[13]

The failure of this claim, which is the only claim we discern that is premised on the existence of an agency policy as opposed to specific individual actions by public officials, also compels dismissal of Dickinson Township as a Defendant in this lawsuit.  It is well-settled that local governmental entities may not be held liable under § 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability.  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1948 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Thus, to sustain a municipal liability claim against an institutional defendant, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury."

---

[13]We also note that the temporal distance between the Plaintiffs' statements in 2008 and the enactment of this written policy in June 2009, undermines any claim that the written policy was designed to be retaliatory since for temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512. (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997).

44

Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997).  This custom must be "so widespread as to have the force of law."  Id. at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).

The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation."  Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404).  A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'"  Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted).  There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'"  Id. at 325(citations omitted).  Therefore, analysis of a claim under Monell requires separate analysis of two distinct issues:  "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation."  Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

An institutional defendant may also be liable for constitutional violations resulting from inadequate training or supervision of its employees if the failure to train amounts to a custom of the municipality.  However, failure-to-train claims also must meet precise and demanding legal criteria.  Such a failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in contact."  Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  Proving agency liability on a theory of deliberate indifference is an especially difficult showing for a plaintiff to satisfy where the plaintiff has alleged that insufficient training or supervision has caused constitutional violations.  Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).  Such a showing requires that "(1) . . . lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999).  Moreover, the plaintiff proceeding on such a theory must establish that the agency's "deliberate conduct . . . was the 'moving force' behind the injury alleged."  Reitz, 125 F.3d at 145 (quoting Brown, 520 U.S. at 404).  Therefore, the need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate

preventive measures." Horton v. City of Harrisburg, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. July 23, 2009) (quoting Strauss v. Walsh, No. Civ. A. 01-3625, 2002 U.S. Dist. LEXIS 24717, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)).  Additionally, in order to recover for municipal liability on a failure-to-train theory, the alleged failure must be "closely related to the ultimate (constitutional) injury." Woloszyn, 396 F.3d at 325.

The Supreme Court has recently reaffirmed the guiding principles which define institutional civil rights liability based upon a failure to train or oversee law enforcement officers. In Connick v. Thompson, – U.S.– , 131 S.Ct. 1350, 1359 (2011), the Court described the parameters of agency liability in the following terms:

> A municipality or other local government may be liable . . .if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479(1986) . . . . They are not vicariously liable under § 1983 for their employees' actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S., at 691. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . . These are "action[s] for which the municipality is actually responsible." Pembaur, supra, at 479–480.  In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.

47

A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . . . Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. . . . " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . . Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

Id.(some citations deleted).

Here, given the facial validity of the township public comment policy, the Plaintiffs simply do not make any allegations which would permit a finding of liability against the township as an institutional Defendant.   Therefore, the Plaintiffs' claims against this institutional Defendant fail as a matter of law.

As for the remaining specific substantive First Amendment claims leveled by Mr. Breslin and Mr. Thompson against the individual Defendants, for the most part these allegations do not state claims of a constitutional dimension.   For example, like Mr. Cunningham, Mr. Breslin and Mr. Thompson raise a number of concerns about limitations on the timing and duration of their public comments, imposed upon them

48

by township officials other than the named Defendants during township supervisor meetings in 2010. These claims fail as substantive First Amendment allegations for a host of reasons. First, to the extent that these claims involve conduct by persons other than the named Defendants, they do not state cognizable claims against either Defendant Jones or defendant Schorpp. Second, in many respect these complaints entail nothing more than disputes regarding meeting rules regulating the timing of public comments, since for the most part the Plaintiffs' complaints are that their statements were restricted to the public comment portion of the meeting, and they were not designated additional time on the meeting agenda. However, it is well-settled that such viewpoint neutral restrictions are permissible to maintain decorum in such forums and prevent repetitive and truculent speakers from "try[ing] to hijack the proceedings, or to filibuster them, [which] would impinge on the First Amendment rights of other would-be participants." Eichenlaub v. Township of Indiana, 385 F.3d at 281. Further, to the extent that Mr. Breslin complains that on one occasion he may have been ruled out of order by Defendant Schorpp when he attempted to discuss personnel matters relating to third parties who were township employees, (Id., ¶90), since state law explicitly exempts personnel issues from the topics which may be addressed in a public meeting, see 65 Pa. C.S. §708(a)(1), this otherwise viewpoint neutral restriction

on comments which was called for by state law cannot form the basis for a valid constitutional claim.

In sum, with respect to the substantive First Amendment claims described above, the Plaintiffs' arguments are premised upon a fundamental legal misunderstanding regarding the scope of the First Amendment's protection in a limited public forum, coupled with a fatal failure of proof as a matter of fact. Therefore, it is recommended that these claims be dismissed.

## 2. The Plaintiffs' First Amendment Retaliation Claims Relating to the Processing of State Right-to-Know Law Claims also Fails

The Plaintiffs' First Amendment retaliation claims relating to the processing of their Right-to-Know requests under state law also fail. Indeed, despite almost three years of litigation, in many critical respects the legal and factual underpinnings of these particular retaliation claims remain poorly defined by the Plaintiffs. Despite this lack of clarity, our assessment of these specific claims reveals a number of essentially undisputed facts.

First, it is undisputed that Paul Cunningham has submitted no Right-to-Know law requests to township officials and, therefore, has no First Amendment retaliation claims regarding the processing of these requests. (Doc. 196, ¶121, Doc. 211, ¶121)

Second, it is undisputed that the processing of these requests was undertaken by the township's Right-to-Know Officer, Laura Portillo, who relied upon the township solicitor, Defendant Schorpp, for legal advice when assessing these requests. (Doc. 220-13, Portillo deposition)  Notably, both Ms. Portillo and Defendant Jones have stated, without contradiction by the Plaintiffs, that the township supervisors did not play a decision-making role in granting or denying specific requests. (Doc. 196, ¶¶44-60, 105-121)

Indeed, as to these Right-to-Know claims with respect to Defendant Jones the Plaintiffs tacitly acknowledge Jones' lack of direct involvement in this process, and instead largely premise the Defendant's liability upon his official station, alleging that "[a]s Chairman of the Board of Supervisors, Defendant Jones was the 'agency head' responsible for determining what action was in the public interest." (Doc. 211, ¶59) Therefore, the Plaintiffs seem to concede that Jones was not involved in this process they deem to be retaliatory.  Accordingly, on this score the Plaintiffs base their claim against Defendant Jones not on what he did, but rather on what they believe he should have done; namely, they believe that Jones should have personally reviewed and approved the denial of specific requests.

We cannot embrace this theory of civil rights liability, which grounds culpability on a public official's supervisory status in the absence of any direct action

by that official.  A claim of a constitutional deprivation cannot be premised merely on the fact that the named Defendant was government supervisory official, when the incidents set forth in the complaint occurred.   Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution.  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902 (3d Cir. 1997); <u>see also Maine v.Thiboutot</u>, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997).  In particular, with respect to government supervisory officials it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

Applying these benchmarks, courts have frequently held that, in the absence of direct evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their

subordinates.  O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. Appx. 178, 181 (3d Cir. 2006).  Here, proof of Jones' acquiescence and approval of specific decisions relating to particular Right-to-Know law requests is lacking, and the Plaintiffs seek to hold Jones liable because "[a]s Chairman of the Board of Supervisors, Defendant Jones was the 'agency head' responsible for determining what action was in the public interest." (Doc. 211, ¶59) This the Plaintiffs cannot do.  Therefore , this retaliation claim against Defendant Jones fails as a matter of law.

Beyond these threshold obstacles, this particular retaliation claim also fails because the Plaintiffs have neglected to articulate what they need to show to establish such a claim through circumstantial proof:  either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997). In fact, the Plaintiffs have identified nothing particularly suggestive or probative about the manner in which

these requests were processed in 2009, months after their acrimonious exchange with Defendant Jones.   Thus, we know that Plaintiffs Breslin and Thompson have submitted approximately 59 Right-to-Know requests to the township since 2009. (Doc. 196, ¶¶110-120) All of these request have been answered, (Id.), and in many instances the Plaintiffs have apparently received the documents they requested.  (Id.)  In those instances where the Plaintiffs were dissatisfied with the township's response they have appealed to Pennsylvania's Office of Open Records.  (Id.)  For example, Mr. Breslin pursued three such appeals, two of which were denied, and one of which was dismissed.  (Id.)  Mr. Thompson, in turn, lodged six appeals, four of which were denied and two of which resulted in partial relief for this Plaintiff.  (Id.)  With respect to these successful appeals, the township then complied with the instructions of the Office of Open Records by providing Mr. Thompson further information, and Mr. Thompson did not seek any additional relief.

In this setting, where the Plaintiffs have had all of their numerous requests answered; have had a number of requests granted; have had a full and fair opportunity to appeal the denial of any requests; and have pursued appeals which have generally sustained the lawfulness of the township's action, we simply cannot find that the Plaintiffs have established an actionable retaliation claim.  Rather, the due process protections afforded to the Plaintiffs by state law, and the outcome of these appeals

which have generally sustained the township's actions, largely undermine this retaliation claim.  See Nifas v. Beard, 374 F. App'x 241, 244  (3d Cir. 2010)(prisoner first amendment retaliation claim, where administrative appeals process reveals some evidence to support government action, this finding "checkmates" a retaliation claim).[14]  Therefore, this particular retaliation claim also fails.

_____

[14]Having failed to demonstrate a retaliation claim based upon the denial of these requests, the Plaintiffs cannot sustain this particular retaliation claim on a legal theory which differs from that originally articulated in this case–a claim that the township's argument in one instance that Plaintiff Thompson's repeated requests should be denied because he was a disruptive requester constituted some form of retaliation. This allegation fails as a constitutional retaliation claim for several reasons.  First, state law expressly allowed government entities to deny requests that they considered to be excessive redundant and repetitive. In this case, the township had a basis for voicing this concern, given the 38 requests submitted to them by Thompson since 2009.  In any event, after Thompson appealed and prevailed on this issue before the Office of Open Records, the township complied with his request, and there is nothing suggesting that the township sought to deny any other requests on this ground.  Moreover, the Plaintiffs' proof on this score fails to address "the key question in determining whether a cognizable First Amendment claim has been stated . . . whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.' " McKee v. Hart, 436 F.3d 165, 170 (3d Cir.2006) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir.2000)).  Quite the contrary, it appears that the township's isolated, and unsuccessful, effort to make this claim, did nothing to deter Thompson from submitting additional Right-to Know requests.

### 3.     Disputed Issues of Fact Preclude Summary Judgment With Respect to Plaintiff Breslin and Thompson's Claims Against Defendant Jones Arising Out of the December 2008, Township Supervisor Meeting

While we find that the Defendants are entitled to summary judgment on many of the Plaintiffs' claims, there is one set of claims advanced by the Plaintiffs where we find that disputed material issues of fact preclude summary judgment.  These claims relate to what is alleged to have been Defendant Jones' refusal to allow Plaintiffs Breslin and Thompson to speak at a December 8, 2008 township supervisor meeting.

As to this claim, the evidence raises factual disputes concerning Defendant Jones' motives when he curtailed comment by the Plaintiffs at this meeting.  These unresolved, and disputed, questions of motive in our view preclude summary judgment since:  "The motive or absence of motive of a party to engage in conduct alleged by another party is relevant to determining whether a genuine issue of fact exists. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 596 (1986)." Berda v. CBS Inc., 800 F.Supp. 1272, 1276 (W.D.Pa), aff'd., 975 F.2d 1548 (3d Cir. 1992).

With respect to this issue the evidence, viewed in a light most favorable to the Plaintiffs,  shows that in the Fall of 2008 the Plaintiffs engaged in a chorus of criticism leveled against township officials, including Defendant Jones.  That chorus of criticism reached a crescendo in October 2008 when Mr. Breslin engaged an in an

hour-long address at a township supervisor meeting.  In the immediate wake of this conduct, the evidence would permit an inference that Defendant Jones developed an antagonism towards the Plaintiffs.

That apparent antipathy manifested itself at the November 18, 2008 township supervisors meeting, when Defendant Jones took the singular step of using his access to this limited public forum to identify the Plaintiffs by name, question their motives, challenge their methods of addressing township concerns, and publicly label them as malcontents.  Without allowing the Plaintiffs an opportunity to respond to these remarks, Defendant Jones then announced a new public comment policy for future meetings, stating: "Our public comment period is clothed under the law with openness for comment on matters of current business, not for personal attacks of an historic origin.  We trust these individuals will govern their future conduct accordingly." (Id.)

We have concluded that this exercise of Defendant Jones' First Amendment rights on November 18, 2008, did not, by itself, violate the First Amendment rights of his critics, the Plaintiffs.  We reaffirm this conclusion.  Indeed, the free and frank exchange of views lies at the heart of this constitutional protection, and it is a right that both the Plaintiffs and Defendant Jones shared.  Therefore, the Plaintiffs cannot be heard to complain when Jones exercised his First Amendment rights in November

2008.  However, what ensued *after* this exercise of First Amendment freedoms by Defendant Jones may give rise to a constitutional claim.

Specifically, a township supervisor meeting was then conducted on December 8, 2008.  (Doc. 196, ¶¶31-33, and 77-80)  Mr. Breslin and Mr. Thompson both attended this meeting, and Thompson endeavored to speak to rebut the November 18, 2008 "malcontent" statement read by Defendant Jones which was specifically directed at the Plaintiffs.  Despite the fact that Defendant Jones had used this same limited public forum for the express purpose of speaking out about the Plaintiffs only three weeks earlier, when Mr. Thompson sought to speak, to rebut these statements, and address what he described as "historic" matters, his request was refused by Jones, who concluded that these remarks would violate the newly enacted policy limiting comment to current township business, (Id.)

The Plaintiffs allege that this December 8, 2008 episode constituted both a substantive First Amendment violation and an instance of retaliation against the Plaintiffs for their prior exercise of their First Amendment rights.  The Defendants contest this claim, arguing that this particular allegation fails to state a substantive First Amendment claim, and contending that Jones' decision to deny Thompson the opportunity to speak did not violate the First Amendment because it was viewpoint

neutral since Jones did not know what "historic" matters Thompson wished to address when Jones denied this request to speak.

In this setting, where we are enjoined to consider disputed issues of fact in a light most favorable to the Plaintiffs, we find this argument unpersuasive. While the evidence may certainly permit a finding that Defendant Jones was acting in a viewpoint neutral fashion, the facts also allow an inference that Jones–who had publicly condemned the Plaintiffs only twenty days earlier in this public forum labeling them as malcontents–had a ready understanding of the viewpoint that the Plaintiffs intended to express at this gathering. The evidence, viewed in a light most favorable to the Plaintiffs, would also permit but not compel a conclusion that Defendant Jones' decision, which prevented the Plaintiffs from replying to his malcontent declaration in the same public forum where Jones chose to make that declaration, was influenced by what he anticipated their viewpoint to be with respect to that allegation. Construed in this light, Defendant Jones' actions on December 8, 2008, could be found to constitute a viewpoint-based restriction on speech. Since "viewpoint-based restrictions violate the First Amendment regardless of whether they also serve some valid time, place, manner interest," Monteiro v. City of Elizabeth, 436 F.3d 397, 404 (3d Cir. 2006), these actions could give rise to civil rights liability under the First Amendment. At a minium these disputed issues regarding the defendant's

motivation on December 8, 2008, present a question of fact, for trial, rather than an issue of law for the Court to determine. Id.

Similarly, these specific events present disputed factual issues relating to whether the Plaintiffs can show circumstantially that Defendant Jones endeavored to retaliate against them on December 8, 2008, because of their recent prior speech.  In this regard, this contested evidence, viewed in a light most favorable to the Plaintiffs, may meet the requirements prescribed by Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) to sustain a First Amendment retaliation claim: a pattern of antagonism coupled with timing to establish a causal link.  Here, the chronology of competing criticism, coupled with the decision of Defendant Jones in successive township supervisor meetings to use this forum to attack the Plaintiffs but deny the Plaintiffs the opportunity to use the same forum to reply, may permit a finding of antagonism and timing which could under existing case law equate to causation.

Nor can the Defendants couch this matter as a *de minimis* infraction that is unworthy of constitutional protection.  In this setting, courts have recognized that any viewpoint based restriction on speech violates the First Amendment.  Therefore, an effort to curtail speech based upon the speaker's viewpoint on even a single occasion in a limited public forum may state a constitutional claim.  See, e.g., Monteiro v. City

of Elizabeth, 436 F.3d 397 (3d Cir, 2006); Mobley v. Tarlini, 641 F.Supp.2d. 430

(E.D. Pa. 2009).

Moreover, in a case such as this, where there are disputed issues of fact relating

to a Defendant's motivation, the Defendant may not invoke qualified immunity as a

defense which precludes the Plaintiffs' claims as a matter of law.  As the United States

Court of Appeals for the Third Circuit has explained:

> Although qualified immunity is a question of law determined by the
> Court, when qualified immunity depends on disputed issues of fact, those
> issues must be determined by the jury. See Johnson v. Jones, 515 U.S.
> 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity
> may turn on disputed issues of fact); Karnes v. Skrutski, 62 F.3d 485, 491
> (3d Cir.1995) ("While the qualified immunity defense is frequently
> determined by courts as a matter of law, a jury should decide disputed
> factual issues relevant to that determination."). Motive is a question of
> fact that must be decided by the jury, which has the opportunity to hear
> the explanations of both parties in the courtroom and observe their
> demeanor. See Mitchell v. Forsyth, 472 U.S. 511, 529, 105 S.Ct. 2806,
> 86 L.Ed.2d 411 (1985) (improper intent is a pure question of fact);
> Walker v. Horn, 286 F.3d 705, 710 (3d Cir.2002).
>
> Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).

In sum, as to this last, remaining claim, disputed issues of fact relating to the

motives of Defendant Jones when he curtailed the Plaintiffs' public statements on

December 8, 2008, present constitutional questions which should be determined at

trial and may not be resolved through a motion for summary judgment.

## IV.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants motions for summary judgment, (Docs. 195, 201) be GRANTED, in part, and DENIED, in part, as follows:

IT IS RECOMMENDED that summary judgment be GRANTED on the following claims:

1.   All claims made by Plaintiff Paul Cunningham;

2.   All substantive First Amendment claims, except for the Plaintiffs' claims arising out of the actions of Defendant Raymond Jones on December 8, 2008; and,

3.   All First Amendment retaliation claims relating to the processing of state Right-to-Know law requests by the Defendants.

IT IS RECOMMENDED that summary judgment be DENIED as to any substantive First Amendment or First Amendment retaliation claims relating specifically to Defendant Jones' actions on December 8, 2008.

Finally, the Defendants' Motions to Strike (Docs. 230 and 237) are DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition

of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23d day of March 2012.

***S/Martin C.  Carlson***
Martin C. Carlson
United States Magistrate Judge